# PEOPLE OF TERRITORY OF UTAH *v.* PATRICK COUGHLIN.

ARREST BY PRIVATE PARTY—HOMICIDE—EVIDENCE—RES GESTÆ—
SECONDARY EVIDENCE.

1. Defendant was pursued upon information given to the sheriff of Summit county that defendant, Coughlin, had stolen horses in said county. The sheriff undertook to arrest the defendant, who immediately fired at the sheriff, and at one whom the sheriff had deputized to accompany him; and after the retreat of the officers, and the escape of defendant, the latter had reached an adjoining county, in which he was pursued by Stagg, a constable of the first county, who had received the same information as the sheriff. The constable was accompanied by a deputy sheriff of Wyoming and two others, Taylor and Dawes. Upon approaching the cabin where defendant and one George were housed, defendant began shooting at members of the party, two of whom were killed. *Held,* that it was not an illegal attempt on the part of the constable and his deputies to arrest defendant, as they might make the arrest, under the provisions of section 4855 of the Compiled Laws, as private persons, since an act of felony had been committed.

2. It was not necessary that intention of arrest should be conveyed to the defendant, since he was first seen in the act of committing a crime. Section 4859, Comp. Laws.

3. Evidence of the killing of Stagg at the same time as Dawes, with whose killing defendant is charged, was admissible as evidence, being a part of the *res gestæ.* It was during defendant's resistance of an attempt to arrest him, and within a comparatively short time. It was further proper to admit evidence describing the wound on Stagg's body from an examination made hours after the killing, and after the body had been removed to Evanston, Wyo. If proof of the shot that killed Stagg was proper, a description of the wound made by the shot was also proper.

4. A statement made by defendant five days before at Park City, where he was told that the officers were after him, in which he said "Let them come; I am ready for them," was properly admitted in evidence as showing malice against all who might attempt to arrest him.

5. Testimony of the sheriff whom defendant tried to kill four days before while the sheriff was about to arrest defendant, was admissible as showing a deliberate intention to kill any person who might attempt his arrest.

6. To prove that Constable Stagg had reasonable belief of defendant's guilt, the trial judge might permit the constable's daughter to testify of the contents of a dispatch to her father from the sheriff, ordering the arrest of the defendant, after saying that she was unable to find the telegram among her father's papers, even though she testified that he put it in his vest pocket, and she had not searched his clothes for the dispatch since her father was killed.

(No. 662. Decided Feb. 24, 1896. 44 P. R. 94.)

Appeal from the district court of the Fourth judicial district, Territory of Utah, Hon. G. W. Bartch, *Judge.*

Patrick Coughlin was convicted of murder, and appeals. *Affirmed.*

*H. B. Hayes, T. D. Johnson,* and *W. H. O'Brien,* for appellant.

Now, for the purpose of showing that the said arresting party had reasonable ground upon which to make an arrest of the defendant and his companion, the prosecution introduced secondary evidence of the contents, or rather a part of the contents, of a certain telegram sent by one Harrington, sheriff of Summit county, to Thomas Stagg. The said Stagg was one of the party with deceased, and was also killed in the same conflict.

From the testimony of the witness, Mrs. Hamilton, it appears that she never made any search for the lost tele-

gram in the only place where he was known to keep such papers, that is, in his vest pockets, and all she knew of search being made in his clothes was hearsay. The admission of this testimony is assigned as error, and we submit that no proper foundation was laid for the introduction of secondary evidence of the contents of the lost instrument.

*Hunter* v. *State*, 13 Tex. App. 16; *Sager* v. *State*, 11 Tex. App. 110; *American U. Tel. Co.* v. *Daugherty*, 89 Ala. 191; *State* v. *Whitney*, 38 La. Ann. 579; *Johnson* v. *State*, 9 Tex. App. 249; *State* v. *Hopkins*, 50 Vt. 316; *Chester* v. *State*, 23 Tex. App. 577; *Prather* v. *Wilkins*, 68 Tex. 687; *Lowe* v. *Tandy*, 70 Tex. 741; *State* v. *Penny*, 70 Iowa 190; *O'Connell* v. *State*, 10 Tex. App. 567; *State* v. *DeWolf*, 8 Conn. 93, S. C. 20 Amer. Dec. 90.

We are of the opinion that *Haun* v. *State*, 13 Tex. App. 383, and *Jernigan* v. *State*, 81 Ala. 58, are not opposed to the contention made above.

The mother or sister of the witness should herself have been called to testify as to any search made by her. Greenleaf on Ev., vol. 1, p. 558.

Now, if we are right that no proper search had been made, then the evidence was wholly inadmissible. *Anglo-Amer. Packing & P. Co.* v. *Cannon*, 31 Fed. Rep. 313.

It was error in the court to refuse to strike out the testimony of this witness, made on the ground that she could not remember the whole of the telegram, for as the court will observe, the description of the horses, which she had forgotten, was on the morning of the alleged attempted arrest a most material factor.

Now, the admission of this incompetent testimony was prejudicial to the defendant, since by it it was attempted to lay a foundation for a reasonable cause for the arrest or attempted arrest, if such was the purpose of the party with deceased.

It is clear that unless the party had a reasonable cause to arrest the defendant, and was acting within the limits of the law in that respect, the killing by the defendant of the deceased, if not justifiable, would have only been manslaughter.

In the progress of the trial the prosecution was allowed to prove the killing of Thomas Stagg. It appears that he was killed shortly after the killing of the deceased, on which the indictment was found, and the tendency of the evidence was that he was killed by the defendant here. The evidence of the killing of Stagg was admitted on the ground that it was part of the *res gestœ;* that it was a part of the *res gestœ* is a matter of grave doubt. *People* v. *Lane,* 100 Cal. 379.

But the prosecution went further and introduced evidence of the condition of Stagg's body, the nature and extent of the wounds, and this, too, by witnesses who examined the body long after the killing and long after the defendant had left the scene of action.

In no sense can this evidence be said to be a part of the *res gestœ,* and we respectfully ask on what other ground it can be said to be competent, relevant, or material. Unquestionably, if the defendant had been on trial for the killing of Stagg the evidence would have been competent, relevant, and material, as it was competent, relevant, and material to prove the condition of the body of Dawes, the deceased, for the killing of whom the defendant was indicted. Certainly, the admission of this testimony cannot be considered otherwise than prejudicial. Its tendency was to appeal strongly to the feelings of the jury, and to sway them toward a verdict that they might not otherwise have reached.

The United States Attorney, for the People.

ZANE, C. J.:

The defendant was convicted of the crime of murder in the first degree, and, on motion for a new trial having been denied, he was sentenced to be executed. From this order and judgment of the court below he has appealed to this court.

The facts upon which the verdict was found, so far as we deem it necessary to state them, are that John M. Harrington, who was sheriff of Summit county, upon being informed on the 12th day of July, 1895, that Patrick Coughlin, the defendant, and one Frederick George, with whom the sheriff was acquainted, had stolen two horses in his county, and that they had stolen berries from a fruit peddler, commenced to search for them; that, being informed on the 26th of the month that they had been seen on the Weber river, he obtained a warrant for their arrest, and deputized one Earl Williamson to aid in their pursuit and arrest; that Williamson had also heard that Coughlin and George had recently stolen horses from a man in Salt Lake City; that about 6 o'clock on the evening of the same day they came to a sheep wagon on Crandall creek, and, looking into it, they saw defendant, with his gun leveled upon Harrington; that the latter then told him to "quit his foolishness, and drop his gun;" that defendant fired immediately at Harrington, the ball passing through the horn of his saddle; that Harrington then shot at Coughlin; that defendant and George continued to shoot at the sheriff and his deputy until they had wounded the latter, and until both officers had retreated out of the range of their guns. It also appears that Thomas Stagg, a constable of Summit county, was informed of their alleged larcenies, and requested to arrest them, and that they were near Evanston, Wyo.; that he went to that place, and with Robert Calvarly, a deputy sheriff of that place, and William Taylor and

Edward Dawes, started in a wagon for Palmer's cabin, in Rich county, Utah, where they expected to find the defendant and George; that they alighted a short distance from the cabin, and marched to within four or five hundred feet of it; that it was then daylight; that Calvarly remained in sight of the cabin behind a low hill, and Taylor went to a spring for a drink, about 550 feet from the cabin; that its door opened, and one of the men within leveled a rifle on Taylor and Calvarly, shot at the men, who then stepped back, and both men within commenced shotting out of a small window at Dawes, who was behind a fence post, about 300 feet away; that after they fired five or six times, Dawes and Calvarly commenced shooting, and after Coughlin and George had fired about twenty shots Dawes was killed. Coughlin and George then stopped firing, went out and around to a corner of the cabin, and shot three or four times at Calvarly, and then started away, and as they went they saw Stagg within range of their rifles, and shot and killed him, and then began shooting at Calvarly and Taylor, whose ammunition becoming exhausted, they retreated out of range, and went for more ammunition and reforcements. It also appears that Calvarly and Taylor returned with their reinforcements, and found the dead bodies of Dawes and Stagg; and that Coughlin and George, after eluding arrest five or six days, were arrested in Tooele county, more than a hundred miles from the scene of the cabin.

The refusal of the court to give certain requests to charge the jury, based upon the presumption that there was evidence tending to prove that Dawes, when killed, and the others with him, were attempting illegally to arrest Coughlin and George, is assigned as error. It is true that Calvarly, the deputy sheriff, was out of his state, and that the constable, Stagg, was out of his county, and that the other two were not officers. But section 4855 of

the Compiled Laws of Utah provides that: "A private person may make an arrest: * * * (2) When the person arrested has committed a felony, although not in his presence. (3) When a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it." The evidence in this case clearly shows that on the 26th of July, Coughlin made an assault on Harrington and Williamson with intent to commit murder. If the assaults made upon them had been fatal, the crime would have been murder. There is no room to doubt that a felony had been in fact committed, and that Stagg and the others with him had reasonable cause for believing the persons they were attempting to arrest had committed it. It follows that Dawes and the others with him, though acting as private persons, had the right, under the circumstances, to arrest Coughlin and George.

The refusal of the court to give other requests asked by the defendant, based upon the assumption that the jury ought not to find defendant guilty of murder in the first degree, because the deceased and others with him were attempting to arrest him without informing him of their intention, is also assigned as error. Section 4859, Comp. Laws, is as follows: "The person making the arrest must inform the person to be arrested of the intention to arrest him, of the cause of the arrest, and the authority to make it, except when the person to be arrested is actually engaged in the commission of, or an attempt to commit an offense, or is pursued immediately after its commission, or after an escape." On the morning of the 30th of July, the time of the killing, Coughlin was first seen with his rifle leveled on Taylor, who was at a spring for water, about 550 feet away, and Calvarly shot at him to save Taylor's life, and immediately, and before any opportunity to give them any information,

both commenced shooting at Dawes, and continued shooting until they killed him; and immediately after that they appeared at the corner of the house, shooting at Calvarly, and then they proceeded away from the cabin a short distance, and seeing Stagg, they at once shot and killed him, and they then opened fire on Taylor and Calvarly, and they were obliged to retreat to save their lives. Dawes and Stagg were both killed before they had any opportunity to make known their intentions, and their two colleagues were driven off the field without being able to do so. Coughlin and George were first seen in the act of committing a crime..

Complaint is also made of the ruling of the court admitting evidence of the killing of Stagg. The general rule is that one crime cannot be offered to prove a similar offense committed against another person at another time. The conflict at Palmer's cabin may be called a combat in which Coughlin and George were engaged on one side, and the four men who had gone to the cabin to arrest them on the other. The conflict was continuous, consisting of all that was done by the respective parties, including the various acts of the different parties emanating from their different motives and intentions, all intimately connected. In characterizing the act of Coughlin in killing Dawes, it was proper for the jury to view it in the light of all the influences to which he was subject at the time. It was proper for the jury to consider all his expressions at the time he fired the fatal shot, and before or after, indicating a malicious intent, or the absence of it. Along with the principal facts, the jury should have been given the surrounding facts constituting part of the *res gestæ*. Greenleaf says: "There are other declarations which are admitted as original evidence, being distinguished from hearsay by their connection with the principal fact under investigation. The affairs of men consist

13 UTAH—5

of a complication of circumstances so intimately inter-
woven as to be hardly separable from each other. Each
owes its birth to some preceding circumstance, and in its
turn becomes the prolific parent of others; and each, dur-
ing its existence, has its inseparable attribute, and its
kindred facts materially affecting its character, and
essential to be known, in order to a right understanding
of its nature. These surrounding circumstances, consti-
tuting parts of the the *res gestæ*, may always be shown to
the jury, along with the principal facts. * * * The
principal points of contention are whether the circum-
stances and declarations offered in proof were contempo-
raneous with the main fact under consideration, and
whether they were so connected with it as to illustrate its
character. Thus, in the trial of Lord George Gordon for
treason, the cry of the mob who accompanied the pris-
oner on his enterprise was received in evidence as forming
part of the *res gestæ*, and showing the character of the
principal fact." 1 Greenl. Ev. § 108. We are of the
opinion that evidence of the killing of Stagg was prop-
erly admitted in evidence as part of the *res gestæ*.

But defendant's counsel assigns as error the ruling of
the court permitting a witness to describe to the jury
the wound upon Stagg's body, from an examination
made hours after the killing, and after the body had been
moved to the city of Evanston. The evidence objected to
was not a description of an act or its consequences occur-
ring at a time subsequent to the killing, but concomitant
with it, and constituting, as we have seen, a part of the
*res gestæ*. The wound described was made at the time
of the killing of Dawes, and so connected with it as to
afford some inference of the coexisting motives of the
defendant at the time he fired the fatal shot mentioned in
the indictment. If proof of the shot that killed Stagg was

proper, a description of the wound made by the shot was also proper. And we think that the shot that killed Stagg was so connected with the one that killed Dawes, in time and circumstances, as to afford a reasonable inference that they both proceeded from the same motive, and that together they afforded stronger proof of malice than either by itself. It was proper for the jury to consider the whole conduct of the defendant at Palmer's cabin, from the time he pointed his gun at Taylor at the spring until he fired his last shot. During that time the conflict was continuous.

The ruling of the court in permitting a witness to state that Coughlin said, five days before the killing, at Park City, when told that the officers were after him, "Let them come; I am ready for them," is also alleged as error. This threat against the officers indicated an intention to resist them if they should come to arrest him. It did not indicate malice against any particular officer, but against all persons who might attempt to arrest him.

The defendant also alleges that the court erred in permitting Sheriff Harrington and Williamson to testify that Coughlin and George shot at them at the sheep wagon, four days before the killing of Dawes and Stagg. It will be remembered that when Harrington and Williamson first saw Coughlin at the wagon he had his gun leveled upon them, and when Harrington told him to "put his gun down, and quit his foolishness," he fired at the officer, and continued shooting until he had wounded the deputy, and until both officers had retreated out of reach of his bullets. The conduct of Coughlin on this occasion indicated a purpose to kill any person who might attempt to arrest him. It manifested a deliberate intention to kill all such persons.

Mrs. Hamilton, daughter of Mr. Stagg, testified that her father received a telegram on the 11th or 12th of July

from Sheriff Harrington, and that he put it in his vest pocket; that she had searched for it after her father's death among his papers; that she had not searched his clothes for it herself, but had made inquiry; that she had not found it. On this showing the court permitted the witness to testify, against the objection of the defendant, that the telegram directed her father to arrest Coughlin and George for horse stealing in Park City; that it contained a description of the horses, but she could not recall it. This evidence was offered to show the information upon which Stagg and those with him at the time of the homicide acted. To this ruling of the court the defendant excepted, and now assigns it as error. It appears from the evidence that Stagg knew the contents of the dispatch. The sheriff's statement in the dispatch that Coughlin and George were guilty of horse stealing, and his direction to Stagg to arrest them, were offered as evidence tending to prove that Stagg had reasonable cause for believing that Coughlin and George had in fact committed a felony. The jury could not decide whether Mr. Stagg had a reasonable belief of the guilt of Coughlin and George, without all the information from which he could have formed his belief. Evidence of the contents of the dispatch was not offered to prove to the jury that Coughlin and George had in fact stolen horses; there, was other evidence of that; it was simply offered as evidence tending to show that Stagg had reasonable cause to believe that they had. For that purpose, we think its admission was proper. But Harrington testified that he gave Stagg verbal information of all that the dispatch contained, and it clearly appears from the record that Stagg had been informed of the assault on the sheriff and his deputy at the sheep wagon.

Other errors are assigned, but we do not think them of sufficient importance to require a special examination in

this opinion. We find no error in the record. The order and the judgment of the court below, appealed from, are affirmed.

MINER, J., and JOHNSON, District Judge, concur.