# THE STATE OF UTAH, RESPONDENT, *v.* JAMES MORGAN, APPELLANT.

FACTS SHOWING COMMISSION OF FELONY UNDER SEC. 4175 R. S. 1898—COMMUNICATED TO PRIVATE CITIZENS — SUFFICIENT WARRANT UNDER SUBD. 2 AND 3 SEC. 4638 R. S. 1898, FOR PURSUIT AND ARREST OF FELON — MURDER IN FIRST DEGREE — NECESSARY ELEMENTS UNDER SEC. 4161 R. S. 1898 — WHEN INTENT MAY BE FORMED—EVIDENCE SHOWING CONSPIRACY TO COMMIT FELONY— ACT OF ONE THE ACT OF BOTH — AFFIDAVIT NOT IN BILL OF EXCEPTIONS AND TRANSCRIPT—NOT PART OF RECORD—EVIDENCE —OF PRIOR FELONY—WHEN COMPETENT — ON TRIAL FOR MURDER—EVIDENCE OF ATTEMPTED ESCAPE—ADMISSIBILITY.

*Facts Showing Commission of Felony Under Sec. 4175 R. S. 1898— Communicated to Private Citizens — Sufficient Warrant Under Subd. 2 and 3 Sec. 4638, R. S. 1898. For Pursuit and Arrest of Felon.*

When facts showing the commission of a felony under Sec. 4175 R. S. 1898 are related to the members of a sheriff's posse, Sec. 4638 R. S. 1898, subdivisions 2 and 3, is sufficient warrant for the members of such posse although private citizens and non-residents of the county, to follow and capture the persons who committed the crime, using sufficient force to accomplish such capture.

*Murder in First Degree—Necessary Elements Under Sec. 4161 R. S. 1898—When Intent May be Formed.*

Any kind of willful, deliberate, malicious and premeditated killing is sufficient to constitute murder in the first degree under Sec. 4161 R. S. 1898; and the willful, deliberate and malicious intent may be formed the instant the criminal act is done.[1]

---

[1] *People* v. *Coughlin,* 13 Utah, 58.

*Evidence Showing Conspiracy to Commit Felony—Act of One the Act of Both.*

> Where the evidence shows that the defendant and another were associated together to rob and resist arrest, even to the killing of other persons, and in resistance one of the persons attempting arrest was killed, the killing, by whomsoever done, was the act of each and both of the conspirators, and defendant is chargeable therewith, whether he or his companion fired the fatal shot.

*Affidavit not in Bill of Exceptions or Transcript—Not Part of Record.*

> An affidavit not embraced in the bill of exceptions or transcript and not presented to the trial judge on motion for a new trial, but which is brought to the attention of this court for the first time on the argument on appeal and without notice to the other side, can form no part of the record in the appellate court and is without legal merit.

*Evidence—Of Prior Felony—When Competent—On Trial for Murder.*

> On the trial for murder for the killing of a person attempting to arrest defendant and another for the commission of a robbery, evidence of the commission of such felony by defendant and his confederate is competent as tending to show motive for resisting arrest, and that in connection with their criminal intent they were confederated together for the felonious purpose of robbery and resistance to the civil power of the State and that the act of either was the act of both.

*Evidence of Attempted Escape—Admissibility.*

> Evidence tending to show an attempted escape of defendant may be given in evidence against him.

( Decided June 4, 1900.)

Appeal from the First District Court of Box Elder County. Hon. Charles H. Hart, *Judge.*

Defendant was prosecuted for and convicted of the crime of murder in the first degree and from the judgment entered on conviction appealed to this court. *Affirmed.*

*R. H. Jones, Esq.*, for appellant.

*Hon. A. C. Bishop*, Attorney Gen'l, for the State.

Miner, J.

The defendant in this case was charged and convicted of murder in the first degree. The record shows that shortly after nine o'clock on the evening of the 29th of April, 1899, Fred Hanson started from Brigham City, Box Elder County, to return to his home located about one mile distant. It was a dark night. At the outskirts of the city Hanson was met by two men afterwards known as the defendant James Morgan and his brother who was called Archie Majors. These two men drew their revolvers on Hanson, ordered him to throw up his hands and say nothing or they would kill him; he did so and was ordered to come with them, their revolvers being placed at his head. Hanson was compelled to go with the hold-ups for about 75 yards into an unfrequented spot, and there he was compelled to kneel down.

The hold-ups then tied his hands behind his back, rifled his pockets and took from him a silverware sample outfit, a pocket book, a purse, a pocket knife, cuff and collar buttons, watch and two quarts of milk, and other property, and also took his shoes and stockings off his feet. They then tied his feet, drank the milk and laughed over it. Hanson's necktie was then taken off, stuffed into his mouth, his handkerchief tied around his mouth, and he was told if he uttered an outcry they would come back and kill him. The hold-ups then left him on the ground bound hand and foot. Sometime afterwards Hanson succeeded in releasing himself from his bonds and notified Sheriff Gordon and Deputy Sheriff Thompson of the outrage. These parties with Constable Wells started in pursuit of the offenders. The hold-ups were discovered near

Hot Springs, and were ordered to halt, but they refused to halt and told the officers to go back, and then went into the mountains. The officers fired some shots over the heads of the pursued men to stop them, but the fire was returned by the two men, and twenty-five shots were then exchanged between the fugitives and officers and the firing continued until the cartridges of the latter were exhausted. The officers then telephoned to officers at Ogden to come to their assistance. Sheriff Layne of Weber county and his deputies Joseph Belknap and Joseph Bailey, and also Captain William Brown of the Ogden police force at once responded, and arrived at the scene by day-light next morning. Sheriff Gordon of Box Elder county at once advised the Weber county officers and Brown in detail of the robbery, and of their encounter with the robbers. All these parties then separated into groups of two and three and started in pursuit of the robbers.

About 2 p. m. of April 30th, Sheriff Gordon, Belknap and Brown encountered defendant Morgan and Majors on the mountain side, and commanded them to halt; the command was refused; the officers gave pursuit, and when within 75 yards of the fugitives three shots were fired over the heads of the fugitives, and they were again cammanded to halt. The fugitives returned the fire upon the officers. The officers then shot at the fugitives and Majors was killed. Almost immediately after Majors was shot the defendant Morgan shot and killed Captain Brown.

The testimony shows that after Majors was shot and killed the defendant took deliberate aim and shot and killed Brown. The defendant then dropped behind a rock, and upon being commanded, held up his hands and was captured.

Deputy sheriff Belknap of Weber county testified to what transpired. He says, in substance, that after following the robbers for some time with Brown and Gordon, he discovered them 200 yards away and hallooed at them and said "stop boys, come back and give up," but that they did not stop; that he hallooed two or three times loud enough to be heard; that they kept on running; that they ran after them for about a half a mile; that he saw each robber have a revolver; that he hallooed at them again to stop, that they did not want to hurt them; that it was "nothing but a hold-up; to stop and come back and give up;" that at this time they were 80 yards away; that the robbers then started to whirl around towards us with their guns in their hands; that all three of the pursuers then shot at the fugitives; that defendant Morgan pointed his pistol at Brown, who was 15 feet to one side of the other officers, and fired; that he fired as he turned around facing the officers; that the defendant then took deliberate aim at Brown and shot; that the shot struck Brown and killed him; that this shot was fired a second or two after Majors was shot; that it all happened in about five seconds.

Sheriff Gordon gave testimony to the same effect.

After his arrest the defendant stated to Sheriff Gordon that he heard them call to stop before they shot, but says, "we thought we could get into the brush or behind the rocks, where we could hold our own and stand you off."

The property stolen from Hanson on the evening before was mostly found in possession of the defendant and Majors at the time, and the balance was found soon after where the first encounter took place. The shoes taken off Hanson's feet the night before, were found on the feet of defendant at the time of his capture.

The information charged the defendant with the murder

of William Brown, and he was found guilty of murder in the first degree. Upon his election he was sentenced to be shot. A motion for a new trial was made and denied. From the judgment of conviction this appeal was taken.

The appellant contends that under the facts, as shown, no motive or malice is proved on the part of the defendant; that the act was committed under great provocation and in the heat of passion when pursued by the officers, and after they had fired the first shot; that the crime committed did not exceed manslaughter or justifiable homicide, or at most murder in the second degree; that the verdict of guilty in the first degree was erroneous and not warranted by the evidence; that William Brown was not a resident of Box Elder county, where the crime was committed, and was a private person not authorized to make an arrest.

Sec. 4638 R. S. 1898, provides that a private person may arrest another: "2d. When the person arrested has committed a felony, although not in his presence; 3d. When a felony has been committed and he has reasonable cause to believe the person arrested to have committed it.

The testimony clearly shows that on the night previous to the murder, the defendant committed a felony by robbing Hanson of his property and gagging and tying him hand and foot. These facts were communicated to all the officers, including Brown, by Hanson and Sheriff Gordon, and they were all requested to assist in the capture of the bandits. It is clear that a felony had been committed under Sec. 4175 R. S. 1898, and that Brown and the officers from Weber county and the sheriff's posse had reasonable cause to believe that the persons they were attempting to arrest had just committed it, and were fleeing to escape arrest. It follows that Brown and the officers with him composing the sheriff's posse, even

though acting as private citizens and non-residents of the county, had a right, under the circumstances shown, to follow and capture the defendant, using sufficient force to accomplish such arrest. *People* v. *Coughlin*, 13 Utah, 58; 1 Bish. New Crim. Proc. Sec. 168; *People* v. *Poole*, 37 Cal. 573; Sec. 4642 R. S. 1898.

Whether the defendant was properly convicted of murder in the first degree depends upon the statute and the testimony.

Sec. 4161 R. S. 1898, reads as follows:

"Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, rape, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed; or perpetrated by an act greatly dangerous to the lives of others and evidencing a depraved mind, regardless of human life,—is murder in the first degree. Any other homicide committed under such circumstances as would have constituted murder at common law, is murder in the second degree."

The defendant and his companion had committed a felony, and Brown and the sheriff and others were lawfully in hot pursuit. The officers had commanded the fleeing parties to halt; they had refused, and notified the posse not to follow them. Soon after a second command was given to the offenders to surrender, and the command was disobeyed. Shots were then fired and returned by the bandits. Many of these return shots struck and raised the dust near the officers. Finally the defendant took deliberate aim and shot and killed Brown. The killing was not perpetrated by poison or lying in wait, but this is not necessary in order to constitute murder in the

first degree. Any other kind of willful, deliberate, malicious and premeditated killing is sufficient to constitute the higher grade of crime under the statute. To fall within the first degree the murder must have been premeditated, willful, deliberate, and malicious. A willful, malicious intent may be formed the instant the criminal act is done.

A man may do a thing willfully, intentionally, maliciously and deliberately from a moment's reflection as well as after pondering over it a month. He may think and premeditate before doing the act and do it the same instant he conceives the criminal purpose, as well as if he had premeditated over it for a long time. The statute fixes no time when the deliberation and purpose to kill shall have been formed before the act of killing shall take place. The distinction between murder in the first degree and in the second degree is that in the former, unless it is committed in perpetrating or attempting to perpetrate arson, rape, burglary or robbery, the killing must be deliberate and premeditated, while in the latter the killing is not premeditated or deliberate. In the one case there is a deliberate, premeditated, preconceived design and intent to kill, though it may have been formed in the mind immediately before the mortal wound is given. The premeditated design to kill may precede the fatal blow. In the other case there is no deliberation, premeditation or preconceived design to kill. To constitute murder in the first degree, the unlawful, malicious killing must be accompanied with a clear intent to take life. This is the great distinguishing feature between murder in the first and murder in the second degree. In both cases the killing must have been unlawful and accompanied with malice. "In cases where the killing was done in perpetration of the felonies, or the attempt to per-

petrate the felonies mentioned in the statute, murder in the first degree may be committed, although no intent existed to kill at the time of the fatal blow, as if the criminal shot at the deceased for the purpose of disabling him, or the like." *People* v. *Bealoba*, 17 Cal. 399.

So the act of homicide by poison or lying in wait carry with them conclusive evidence of premeditation, and a jury have no option but to find the prisoner guilty in the first degree upon proof of the crime.

. Many elements are wanting that are necessary to classify the crime herein as falling within the rule of either justifiable or excusable homicide or of manslaughter, and all the elements are shown by which defendant could properly be found guilty of murder in the first degree.

The case of *People* v. *Coughlin*, 13 Utah, 58, arose from a similar state of facts, and is directly in point upon the main question presented in this case. In that case the issues raised are decided adversely to the contention of the appellant herein. *People* v. *Bealoba*, 17 Cal. 399; *Commonwealth* v. *Green*, 1 Ashmead (Pa.) 296; *Commonwealth* v. *Murray*, 2 Ashmead (Pa.) 43; *People* v. *Long*, 39 Cal. 694; *People* v. *Welch*, 49 Cal. 174; *People* v. *Hunt*, 59 Cal. 430; *People* v. *Poole*, 27 Cal. 573.

The testimony clearly shows that the defendant to prevent his arrest and capture for a felony deliberately shot and killed Brown; but even if the killing was not directly traced to the defendant, still the record shows that in connection with their criminal acts these two men were acting in concert to rob and resist arrest even to the killing of other persons, and being so associated and confederated together in their felonious purposes of robbery and resistance to the civil power of the State, the killing of the deceased by whomsoever it was done, was the act of each and both of the conspirators, and thereby the defendant

is chargeable therewith, whether he or his companion fired the fatal shot. *People* v. *Coughlin*, 13 Utah, 58; *People* v. *Poole*, 27 Cal. 573. 3 Greenl. on Ev. Sec. 94. *State* v. *Mowry*, 15 Pac. 282.

If one who has committed a felony kills another whom he knows is in fresh pursuit of him for such felony, under the circumstances shown here, he is guilty of murder in he first degree. *People* v. *Poole*, 27 Cal. 573; 3 Greenl. on Ev. Sec. 94; 3 Whart. Crim. Ev. Sec. 2924; *People* v. *Coughlin*, 13 Utah, 58; *State* v. *Mowry*, 15 Pac., 282.

Appellant also contends that he was tried fifteen days after the alleged crime was committed, and before public excitement attending the crime had subsided, and that therefore he did not have a fair trial.

Upon the trial of this case the defendant was represented by three practicing attorneys residing in Box Elder county, and the record does not disclose that any request was made for a postponement of the trial. Indeed it was admitted by counsel upon the argument here that no such request was made. It does not appear that the defendant was injured or prejudiced by proceeding with the trial at the time the case was set; nor are we able to find any request, motion, objection or exception in this regard.

Counsel for appellant also urge that the court erred in not granting a new trial on the affidavit of Verne Phillips to the effect that one of the jurors upon the panel had expressed an opinion unfavorable to the defendant before he was sworn as a juror. This alleged affidavit is not embraced in the bill of exceptions or transcript. No such affidavit was before the trial judge before, or at the time when the motion for a new trial was made or overruled. It is brought to the attention of this court for the first time on the argument of the appeal, without any notice to the other side, and can form no part of the record of this

court in this case, and is wholly without any legal merit.

Appellant also alleges error in the admission of the testimony of Hansen, to the effect that he was held up, gagged and robbed by the alleged bandits on the night previous to the murder. This testimony was clearly proper as tending to justify the officers in calling for assistance in making the pursuit of the robbers after the robbery, and in justification of the parties so called, in assisting to make the arrest. It was also admitted as tending to show that the defendant was engaged in the commission of the robbery, and that he and his confederate had a motive beyond their own protection as men innocent of crime, in killing the deceased while in pursuit of them; and to show that in connection with their criminal purpose, they had agreed to resist being arrested even to the death, and that being confederated together for the felonious purpose of robbery and resistence to the civil power of the state, the killing of the deceased, by whichever of them actually done, was the act of each and all of the conspirators. *People* v. *Coughlin*, 13 Utah, 58; *People* v. *Poole*, 27 Cal. 573.

Counsel for the appellant except to the refusal of the court to give instructions to the jury as requested by appellant. This exception was not insisted upon or argued at the hearing, and we are unable to find any such requests that were not given. The charge as a whole seems to be fair, and covers all the material issues in the case.

The appellant also alleges error in the admission of the testimony of Sheriff Gordon to the effect that during the trial the pistols used at the shooting, with cartridges, were in the court room, and that after an adjournment the defendant made a quick move sideways, a step or two, in the directions of the pistols which he was looking at over his shoulder, and that Mr. Allison put his hands in front

of the prisoner and stopped him.   Considering the desperate character of the man, as shown, we are of the opinion that the testimony was proper for the purpose offered, as tending to show the attempted escape.   A prisoner's attempt to escape may be given in evidence.   *Burns* v. *State,* 38 Ark. 221; *People* v. *Sheldon,* 68 Cal. 234; Whart. Crim. Ev. (9th Ed.) Secs. 750, 752.

We have examined all the alleged assignments of error in the record, so far as we have been able to discover them from an imperfect record, and from such an examination are convinced that the testimony clearly justifies the verdict of the jury and judgment of the court.

From his first introduction the defendant appears to have been an outlaw, having no regard for the rights of life, liberty or property of others, and in defense of his own criminal acts deliberately took the life of the brave and fearless Captain Brown, and it was no fault of either he or his companion, that the lives of Sheriff Gordon and Belknap, and the other valiant men composing the pursuing party, were not also taken.   It is a source of gratification to all law-abiding people that the State contains within its borders such courageous, fearless and high-spirited men, who are willing to endanger and lay down their lives in enforcing the law, and in protecting the lives and property of the people of the State.

We find no reversible error in the record.   The judgment and sentence of the district court is affirmed, and the cause remanded to said court with directions to execute judgment and sentence in accordance with law.

BARTCH, C. J., and BASKIN, J., concur.