THE STATE OF UTAH, Respondent, v. ROBERT L. KING and JAMES LYNCH, Appellants.

No. 1302.      (68 Pac. 418).

2. Criminal Law: Murder in First Degree: Testimony of Absent Witness: Admissibility: Constitutional Law.

Revised Statutes 1898, section 4513, subdivision 4, providing that where the charge has been examined before a committing magistrate, and "the testimony taken down by question and answer in the presence of the defendant, who has, either in person or by counsel, cross-examined the witness, . . . the deposition of such witness may be read" upon the trial if it is satisfactorily shown to the court "that the witness is dead, . . . or can not, with due diligence, be found within the State," is not in conflict with Constitution, article 1, section 12, guaranteeing that an accused shall have the right "to be confronted by witnesses against him."[1]

1. Same.

A witness was examined and cross-examined at defendant's preliminary hearing. He did not appear at the trial, though subpoenaed. His roommate had not seen him for three weeks, when he stated that he was going to Oregon. To the officer summoning him as a witness, he stated that he was going away, but would return. The officer had not seen him since serving the subpoena upon him. Another officer had not seen the witness since the day he was summoned as a witness, and stated that at that time he informed the officer he was going to Oregon. The name of the witness was called in court at the opening of

[1] State v. Mannion, 19 Utah 505, 512, 57 Pac. 542, 544, 45 L. R. A. 638, 75 Am. St. Rep. 753.

State v. King et al.

the trial. A subpoena was issued for him at the time of the
trial, which was returned unserved. The return showed that
after due diligence the witness could not be found, and that his
whereabouts were unknown. *Held*, that the trial court properly
exercised its discretion, within Revised Statutes 1898, section
4513, relating to the depositions of witnesses, when it is "satis-
factorily shown to the court" that the witness "can not, with
due diligence, be found within the State," in admitting the tes-
timony given at the preliminary hearing by the absent witness.

3. **Criminal Law: Murder: Commission of Felony: Indict-
   ment: Sufficiency: Evidence of Felony: Admissible.**

   Revised Statutes 1898, section 4161, provides that "every murder
   perpetrated by poison . . ., or any other kind of willful,
   deliberate, malicious and premeditated killing, or committed
   in the perpetration of any arson . . or robbery" is murder
   in the first degree. An information for murder alleged that
   the accused "willfully, deliberately, maliciously, and with pre-
   meditated malice, killed and murdered" decedent. *Held* suffi-
   cient to charge murder in the first degree, and evidence tending
   to show that the murder was committed in the perpetration of
   a robbery was properly admissible.

4. **Appeal: General Exceptions: Insufficient.**

   General exceptions to the instructions of the court, or exceptions to
   whole paragraphs thereof, are insufficient to raise questions on
   appeal.[2]

5. **Criminal Law: Conspiracy: To Commit Felony: Murder.**

   When two defendants and another were associated together to rob
   a person, and such person was killed, the killing, by whichever
   of the three it was done, was the act of each and of all three
   of the conspirators, and the two defendants, were chargeable
   therewith, whether they, or their companion, fired the fatal
   shot.[3]

(Decided March 28, 1902.)

Appeal from the Third District Court, Salt Lake County.—
*Hon. J. E. Booth,* Judge.

[2]Wilson v. Mining Co., 16 Utah 392, 52 Pac. 626; Nebeker v. Har-
vey, 21 Utah 363, 60 Pac. 1029; Lowe v. Salt Lake City, 13 Utah 91, 44 Pac.
1050, 57 Am. St. Rep. 708.
[3]State v. Morgan, 22 Utah 162, 170, 61 Pac. 527, 529.

The defendants were convicted of murder in the first degree, and appealed.

AFFIRMED.

*Will F. Wanless, Esq.,* for appellants.

*Hon. M. A. Breeden,* Attorney-General, and *Hon. W. R. White,* Deputy Attorney-General, for the State.

MINER, C. J.—The information in this case charges, in the usual form, that, on the eleventh day of September, 1900, in Salt Lake county, the defendants willfully, unlawfully, feloniously, deliberately, premeditatedly, and of their malice aforethought, did kill and murder Godfrey Prowse. The testimony shows that the defendants, and a third man unknown, entered the gambling house of the deceased in the nighttime, with their faces masked, and with revolvers in their hands, and there shot and killed the deceased. Their evident purpose was robbery. Defendant Lynch was shot and wounded by Prowse. About thirteen shots in all were fired by all parties, most of them by the three masked men. All three masked men directed their shots at Prowse. Both defendants were identified, and revolvers were found in the alley near where the shooting was done.

Paul Johnson, an eyewitness to the shooting, was called, sworn, and examined by the prosecution, and was cross-examined by the defendants on the preliminary hearing before the magistrate. He was not present at the trial, and the prosecution, under objection, was permitted to read his testimony taken on such preliminary examination to the jury. This is alleged as error. Section 4513, Revised Statutes 1898, so far as material, reads as follows: "In criminal prosecutions the defendant shall be entitled: 4. To be confronted by the witnesses against him, except that where the charge has been preliminarily examined before a committing magistrate

State v. King et al.

and the testimony taken down by question and answer, in the presence of the defendant, who has, either in person or by counsel, cross-examined, or has had an opportunity to cross-examine, the witness, or where the testimony of a witness on the part of the State, who is unable to give security for his appearance, has been taken conditionally in like manner in the presence of the defendant, who has, either in person or by counsel, cross-examined, or has had an opportunity to cross-examine, the witness, the deposition of such witness may be read, upon it being satisfactorily shown to the court that he is dead or insane, or can not, with due diligence, be found within the State." The appellants contend that this statute is unconstitutional, within the meaning of section 12, article 1, of the Constitution, which provides that the accused shall have the right "to be confronted by witnesses against him," and that no sufficient foundation was laid for the introduction of the testimony of the witness Johnson. It appears from the record that witness Johnson was sworn and examined upon the preliminary hearing before the magistrate, and that the accused and his counsel had an opportunity, and did cross-examine him. Mr. Barrett, a person with whom Johnson was rooming at the time, and who was intimately acquainted with him, testified that he did not think Johnson was in the city; that he last saw him three weeks prior to the time of the trial, at which time he was rooming with the witness; that when he left he said he was going to Oregon that day; that he left the city about three weeks prior, and witness had not seen him since. A police officer testified that he knew Johnson, and served a subpoena on him on the twelfth day of October, to appear at the trial set for October 22d. This subpoena was duly returned. Johnson said to the policeman, when subpoenaed, that he was going away, but would return. The witness stated that he had not seen him since. Mr. Sheets, a police officer, testified that he saw Johnson on the twelfth of October, but had not seen him since; that at that time Johnson said he was going away to

the State of Oregon, and said he would write a letter back so his address would be known; that no letter had been received from him.   Witness further stated that Johnson was not in the city.   Johnson's name was called in court, but he did not answer.   When the case was continued from the twenty-second to the twenty-ninth day of October, an order was made by the court requiring all witnesses to be present in court on the twenty-ninth.   Johnson was not present in court at this time. A subpoena was duly issued for him, and thereafter on the same day was duly returned, showing that, after due diligence, search, and inquiry by different police officers, the witness could not be found, and his whereabouts were unknown.   Every effort possible was made to find the witness, without avail. As a general rule, under Constitutions like that of Utah, the accused is entitled to be confronted with the witnesses against him.   As held in State v. Mannion, 19 Utah 505, 512, 57 Pac. 542, 544, 45 L. R. A. 638, 75 Am. St. Rep. 753:   "Under the Constitution and statutes of the State the accused had a right to be present at the trial, to be confronted by the witnesses against him, and to meet his accusers face to.face.   He also had the right to appear and defend against the accusation preferred against him in person and by counsel.   He had the right not only to examine the witnesses, but to see into the face of each witness while testifying against him, and to hear the testimony given upon the stand.   He had the right to see and be seen, hear and be heard, under such reasonable regulations as the law established.   By our Constitution it is clearly made manifest that no man shall be tried and condemned in secret, and unheard."   The chief purpose in requiring that the accused shall be confronted with the witnesses against him is held to be to secure to the defendant an opportunity for cross-examination; so, that if the opportunity for cross-examination has been secured, the test of confrontation is accomplished. If the confrontation can be had it should be had.   By taking the testimony of the witness Johnson in the presence of the

accused upon the examination at a time when he had the privilege of cross-examination, this constitutional privilege is satisfied, provided the witness can not, with due diligence, be found within the State. The constitutional requirement of confrontation is not violated by dispensing with the actual presence of the witness at the trial after he has already been subjected to cross-examination by the accused, and the other requirements of the statutes have been complied with. In 1 Greenl. Ev. (16 Ed.), sec. 163g, p. 284, it is said: "The death of the witness has always, and as of course, been considered as sufficient to allow the use of his former testimony. The absence of the witness from the jurisdiction, out of reach of the court's process, ought also to be sufficient, and is so treated by the great majority of courts. Mere absence, however, may not be sufficient, and it is usually said that a residence or an absence for a prolonged or uncertain time is necessary. A few courts do not recognize at all this cause for non-production; a few others deny it for criminal cases. Neither position is sound. Inability to find the witness is an equally sufficient reason for non-production, by the better opinion, though there are contrary precedents. The sufficiency of the search is usually and properly left to the trial court's discretion. Absence through the opponent's procurement should, of course, be a sufficient reason for non-production. Illness, by causing inability to attend, has the same effect. The phrase usually employed as a test is, 'so ill as to be unable to travel.' The application of the principle should be left to the trial court's discretion." Numerous citations of authority will be found in the notes to this section. In Finn v. Com., 5 Rand. 701, Mendum v. Com., 6 Rand. 704, and Brogy v. Com., 10 Grat. 722, witnesses who had testified on a former trial were not dead, but were out of the State, and the testimony was held to be admissible, the same as if the witnesses were dead. In People v. Oiler, 66 Cal. 101, 4 Pac. 1066, the testimony of a witness taken on a preliminary examination was admitted on the trial under a

provision of the statute applicable to a deceased witness, and the statute was held constitutional. The same rule is held in Summons v. State, 5 Ohio St. 325; Howard v. Patrick, 38 Mich. 795; Mattox v. U. S., 156 U. S. 237, 15 Sup. Ct. 337, 39 L. Ed. 409; Cooley, Const. Lim., 587. The principal object of the provision in the Constitution was to prevent depositions or ex parte affidavits from being used against the accused in the place of a personal examination and cross-examination of the witness, wherein the accused would have an opportunity to cross-examine, and thereby test the recollection and truthfulness of the witness, and also to compel him to stand face to face with the jury, counsel, and accused, that they might look at him and judge of his truthfulness and candor and of his testimony by his manner of testifying. As said in Mattox v. U. S., 156 U. S. 243, 15 Sup. Ct. 339, 39 L. Ed. 409: "There is doubtless reason for saying that the accused should never lose the benefit of any of these safeguards, even by the death of the witness, and that, if notes of his testimony are permitted to be read, he is deprived of the advantage of that personal presence of the witness before the jury which the law has designed for his protection. But general rules of law of this kind, however beneficent in their operation and valuable to the accused, must occasionally give way to considerations of public policy and the necessities of the case. . . . The law in its wisdom declares that the rights of the public shall not be wholly sacrificed in order that an incidental benefit may be preserved to the accused." Under our statute it was necessary for the prosecution to show that the accused had cross-examined the witness, or had an opportunity of so doing upon the examination, and then the testimony of such witness may be read, upon its being shown, to the satisfaction of the court, that said witness was dead, insane, or could not, with due diligence, be found within the State. The testimony tends to show that the witness could not be found, and the trial court had a right to exercise his discretion in the admission of the testimony, pro-

vided he did not abuse such discretion. The reasons given for the absence of the witness were reasonable, and were satisfactory to the trial court. We are not prepared to say that the discretion of the court was improperly exercised in the admission of the testimony of Johnson upon the preliminary showing made. We hold that the statute referred to is valid, and within the provisions of the Constitution.

2. It is also contended that the information does not allege that the offense was committed in an attempt to perpetrate any arson, rape, burglary, or robbery, but simply alleges that the accused did willfully, deliberately, maliciously, and with premeditated malice, kill and murder the deceased, without setting out therein that the offense was committed in the perpetration of robbery, etc., and that evidence was admitted showing that the offense was committed while perpetrating or attempting to perpetrate a robbery, and that the charge of the court upon this subject was erroneous. Section 4161, Revised Statutes 1898, reads as follows: "Every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, and premeditated killing; or committed in the perpetration of, or attempt to perpetrate, any arson, rape, burglary, or robbery; or perpetrated from a premeditated design unlawfully and maliciously to effect the death of any human being other than him who is killed; or perpetrated by any act greatly dangerous to the lives of others and evidencing a depraved mind, regardless of human life—is murder in the first degree. Any other homicide committed under such circumstances as would have constituted murder at common law, is murder in the second degree." Under this statute every murder perpetrated by poison, lying in wait, or any other kind of willful, deliberate, malicious, premeditated killing is murder in the first degree. If the murder charged was committed in the attempt to commit a robbery, etc., it is also murder in the first degree, but in such a case no intent to kill, and no deliberation and premeditation, was necessary; the im-

plied malice involved in the felonious intent to rob being suffi-
cient to establish the malicious intent.   The attempt to perpe-
trate the crime of robbery, or any other felony named in the
statute, during which a homicide is committed, takes the place
of and amounts to the legal equivalent of such deliberation,
premeditation, and design, which were otherwise necessary at-
tributes of murder in the first degree.   This, at least, has been
the holding of many courts, notably the case of Com. v. Flana-
gan, 7 Watts & S. 415, and Titus v. State, 49 N. J. Law 36,
7 Atl. 621.   At common law it was not necessary to charge
in the indictment that the murder was committed in the per-
petration of another crime in order to introduce proof show-
ing that a felony was attempted in committing it.   It was suffi-
cient to charge murder in the common form, and then, upon
proof that it was committed in the perpetration of a felony,
malice, deliberation, and premeditation were implied.   2 Bish.
Cr. Law, sec. 694; 1 Hale, P. C. 465.   So that the indictment
in the form used was sufficient under the statute to charge mur-
der in the first degree, and it is immaterial whether the murder
was charged to have been committed in the perpetration of rob-
bery, etc., or not.   Under such an information evidence was ad-
missible which tended to show the facts of the killing, and also
that the crime was committed in perpetrating a robbery.   We
are also of the opinion that the instructions given to the jury
upon this subject were proper.   The charge contained in the
information was for murder in the first degree.   In 1 McClain,
Cr. Law, sec. 355, the rule is stated as follows:   "The statutes
defining murder in the first degree, perhaps without exception,
include cases where the homicide results during the perpetra-
tion or attempt to perpetrate certain felonies named, those us-
ually included being arson, rape, robbery, mayhem, and bur-
glary.   As has been shown, a homicide resulting from the
commission or attempt to commit a felony is with malice afore-
thought, and is therefore murder.   And the effect of the stat-
utory provision as to the first degree is to make criminal in that

State v. King et al.

degree the murder resulting from committing or attempting to commit the particular felonies specified.   No intent to kill, and no deliberation and premeditation, are necessary, the implied malice involved in the felonious intent being sufficient. The intent to commit one of the named felonies in itself constitutes deliberation and premeditation, and therefore, under an indictment for the first degree, charging the offense as willful, deliberate, and premeditated, evidence is admissible that the homicide was committed in the perpetration of robbery, one of such felonies; or where a common-law form of indictment is sufficient for the first degree, proof of the first degree by the commission of a named felony may be made under such an indictment.   The indictment may, however, allege fully the commission of the felony, and the murder may then be charged as having been committed while in the perpetration of such felony." State v. Johnson, 72 Iowa 393, 34 N. W. 177; State v. Meyers, 99 Mo. 107, 12 S. W. 516; Cox v. People, 80 N. Y. 500; People v. Willett, 102 N. Y. 251, 6 N. E. 301; People v. Olsen, 80 Cal. 122, 22 Pac. 125; Com. v. Flanagan, 7 Watts & S. 415; Titus v. State, 49 N. J. Law 37, 7 Atl. 621; 2 Bish. Cr. Law, sec. 694.

3. General exceptions were taken to the instructions of the court. As frequently held by this court, exceptions to a whole paragraph in the charge of the court to the jury are insufficient to raise any question. Wilson v. Mining Co., 16 Utah 392, 52 Pac. 626; Lowe v. Salt Lake City, 13 Utah 91, 44 Pac. 1050, 57 Am. St. Rep. 708; Nebeker v. Harvey, 21 Utah 363, 60 Pac. 1029. However, we have examined the charge of the court, and find that it sufficiently covers the legal questions raised in the case. It also embodies such parts of the instructions requested by the defendants as were proper to submit to the jury.

4. It it is claimed by the defendants that the testimony shows that a third person was present taking part in the alleged attempt to rob, and also participated in the shooting of Prowse,

and that such person is not named or made a defendant in this indictment, and that the defendants are improperly held responsible for his acts, when they could only be held responsible for the commission of such crimes as come within the intent of the conspirators, and it is claimed that the court improperly instructed the jury upon the liability of these defendants for the acts of the third party. The parties were all associated together for the purpose of robbery, and in attempting to carry out their intent to rob they, or some of them, shot and killed Prowse. They were unlawfully associated together in a common design and illegal conspiracy to commit a felony, and, therefore, the killing of the deceased, by whomsoever of the parties present it was done, was the act of each and all of the conspirators, and the defendants are chargeable therewith, whether they or the absent party fired the fatal shot. This doctrine was clearly held in State v. Morgan, 22 Utah 162, 170, 61 Pac. 527, 529. In that case the court said: "The testimony clearly shows that the defendant, to prevent his arrest and capture for a felony, deliberately shot and killed Brown; but, even if the killing was not directly traced to the defendant, still the record shows that in connection with their criminal acts these two men were acting in concert to rob and resist arrest even to the killing of other persons, and, being so associated and confederated together in their felonious purposes of robbery and resistance to the civil power of the State, the killing of the deceased, by whomsoever it was done, was the act of each and both of the conspirators, and thereby the defendant is chargeable therewith, whether he or his companion fired the fatal shot. People v. Coughlin, 13 Utah 58, 44 Pac. 94; People v. Pool, 27 Cal. 573; 3 Greenl. Ev., sec. 94; State v. Mowry (Kan), 15 Pac. 282." We not only find the instructions upon this subject proper, but are clearly of the opinion that the requests offered by the defendants were properly refused, and that the court committed no error upon the subject to which an exception was taken.

Other exceptions were taken to the proceedings, but, upon careful examination of the questions raised, we find them without merit. Upon the whole record we find no reversible error.

The judgment and sentence of the district court is affirmed, and the case remanded to said court, with instructions to execute the judgment and sentence in accordance with law.

BASKIN and BARTCH, JJ., concur.