STATE v. HETT et al.

No. 4157.   Decided December 15, 1924.   (231 Pac. 838.)

1.  CRIMINAL LAW—RECEPTION OF STENOGRAPHIC NOTES WITHOUT PRELIMINARY FOUNDATION, ERROR. The reception in evidence of transcript of police officer's stenographic notes of statements made by accused without preliminary showing that officer could not testify as to statements without reference to such notes, was error.

2.  CRIMINAL LAW—ERROR IN ADMISSION OF STENOGRAPHIC TRANSCRIPT HARMLESS AS TO DEFENDANT ADMITTING GUILT, BUT PREJUDICIAL AS TO CODEFENDANT MAKING NO SUCH ADMISSION. In prosecution of two defendants tried jointly for murder, erroneous admission of stenographic transcript was harmless as to one who on witness stand admitted that he killed victim, but not as to codefendant as to whom circumstantial evidence failed to satisfactorily show guilt.

3.  HOMICIDE—CIRCUMSTANTIAL EVIDENCE OF CRIMINAL ASSOCIATION WITH GUILTY CODEFENDANT HELD NOT TO SUSTAIN CONVICTION. Evidence of previous criminal association of defendant and codefendant, jointly tried for murder and of previous criminal

record together with suspicious conduct on day following killing, *held* not to sustain conviction of defendant.[1]

Appeal from District Court, Third District, Salt Lake County; *M. L. Ritchie,* Judge.

Harry G. Hett, alias George Allen, and Arthur Hayes were convicted of murder in the first degree, and they appeal.

AFFIRMED as to defendant Hett, and REVERSED AND REMANDED as to defendant Hayes.

*E. F. Allen* and *J. M. Hamilton,* both of Salt Lake City, for appellants.

*Harvey H. Cluff,* Atty. Gen., and *W. Hal. Farr,* Asst. Atty. Gen., for the State.

WEBER, C. J.

The defendants Henry C. Hett, alias George Allen, and Arthur Hayes were charged with the crime of murder in the first degree. The jury found both defendants guilty as charged, recommending life imprisonment as to the defendant Hayes. Hayes was thereafter sentenced to life imprisonment by the court, and Hett was sentenced to be shot to death. Both appeal.

So far as Hett is concerned there is no question as to the facts. According to his testimony at the trial, he arrived in Salt Lake City on or about November 25, 1922, from Colorado, where he had previously met and associated with the defendant Hayes. When in Salt Lake City a day or so he again met Hayes and thereupon they took a room together at the Lincoln Hotel in this city. Hett fixed the date he met Hayes here as November 26, 1922. On the evening of

---

[1] *State* v. *Morgan,* 22 Utah, 162, 61, P. 527.
See (1) 16 C. J. p. 616; (2) 17 C. J. p. 366; (3) 30 C. J. p. 296.

that day Hett and Hayes proceeded to the vicinity of Beck's Hot Springs where, according to Hett's testimony, they saw an automobile parked by the roadside, the automobile being occupied by a white woman and a negro. Hett had some conversation with the occupants of the automobile, and finally he and Hayes climbed into the car and commanded the negro to drive on. After they had ridden a short distance the driver of the automobile drove it into a street car, whereupon the two defendants jumped from the automobile and ran, going across the northwestern part of the city and finally returned to the hotel. According to his testimony, the defendant Hett then claims he remained in the room for a short time after which he left Hayes who remained in the room. After leaving the room he met a man whom Hett called "Happy," whom he claims to have met a day or so before in the lobby of the hotel. Hett and the mythical "Happy" thereupon left the hotel and started toward what they took to be the direction of the railroad yards, where Hett claimed they wanted to go in order to leave town. They walked several blocks, when they ascertained that they were going in the wrong direction, whereupon they started to re-trace their steps, and had reached a point on Main street, a short distance south of Fifth South street, on the west side of the street, and were proceeding north when they met two men who were both walking south. As told, in effect, by Hett when a witness for himself, what then happened was:

As they turned out to pass these two men, one of them said, "Where are you fellows going?" or words to that effect. Thereupon Hett turned and made some remark to the effect that that was none of their business, and, as he did so, he drew a revolver. As soon as Hett drew his gun, Sergeant Pierce of the police force, one of the two men, took several steps backward and away from Hett, at the same time apparently attempting to draw his gun, whereupon Hett drew his gun on Pierce and fired. Pierce dropped to the pavement, and the person who was with Hett then turned and ran. Hett then turned to the companion of Sergeant Pierce,

a patrolman by the name of Watson, backed him into a vacant lot, took his gun from him, and beat him over the head until he was unconscious. Hett then made his escape and ran to his room at the hotel, but before doing so he hid an overcoat which he was wearing, together with two guns, his own and that of Patrolman Watson, under a platform in the rear of the Odd Fellows' building on Post Office place. On the following morning the janitor of the Odd Fellows' building, who was, at the time, in the rear of the building, discovered these articles under the platform and notified the police officers. One of the guns was identified as that belonging to Officer Watson. Thereupon two detectives were stationed in the vicinity of the hiding place of the overcoat and the guns, and a little later the defendants Hett and Hayes were seen to come up the street and as they neared a point opposite the Odd Fellows' building they separated, the defendant Hayes crossing the street and going to the rear of the building where he looked under the platform where the guns and overcoat had been concealed, and, not finding them, turned to go and was then arrested. In the meantime the defendant Hett had proceeded up the street and was arrested by the officers. At the time of arrest each denied ever having seen the other before, and both denied all knowledge of the overcoat and guns.

It is undisputed that on the night of the homicide both officers were in uniform. Sergeant Pierce was severely wounded by the shot fired by Hett, and died on the 26th day of March, 1923, from the wound. Prior to his death Sergeant Pierce, in a dying statement, identified Hett as the man who did the shooting, and Hayes as the man who ran. Patrolman Watson testified at the trial that Hett was the man that did the shooting, and he also identified Hayes as the man who was present and ran when the shot was fired.

A question is raised by counsel for appellants as to the admissibility of several transcripts of stenographic notes of statements made by defendants, such statements being made at different times, and, with one exception, not in the presence of each other. The statements, or rather transcripts,

were not signed by the defendants or either of them. The question was first raised upon tender by the district attorney of one of the documents purporting to be a transcript of the shorthand notes of William Hughes, a stenographer and member of the Salt Lake police force at the time of the homicide. He testified that it was the original transcript of his shorthand notes which he had reduced to typewriting; that it was taken down correctly to the best of his ability; that he took the shorthand notes as the defendant Hett made the statement, and that he correctly transcribed his notes from shorthand into typewriting, and that the exhibit comprised what he heard Henry C. Hett, alias George Allen, say in the presence of the chief of police, several detectives, and himself. Without laying any further foundation the transcript was admitted in evidence over objections by defendants' counsel.

It is not unusual that the statements of those accused of crime are taken down in writing by a stenographer or some one else at the time they are made, and that the one who wrote down the statements is afterwards called as a witness to testify to the correctness of the statements. It is also quite usual that the witness may not be able to recollect all that was said, and, if that be so, then he is allowed to use the written statements to refresh his recollection. There are also instances where a witness has taken down a statement or conversation in writing but has entirely forgotten everything that was said, but knows, that he took down the statements at the time, and is able to state that he wrote what was said correctly. In such instances courts have admitted the written statements as evidence. In this case, however, the stenographer who took down the statements in shorthand and transcribed the same was not asked whether he remembered what was said and did not testify that he did not recollect the statements as made by the accused. Nor was there any foundation laid for the purpose of permitting the stenographer to refresh his recollection by having recourse to the writing. The admission of the transcript was therefore manifest error. But,

under the facts and circumstances of this case, and the testimony of Hett when he was upon the witness stand that he shot Sergeant Pierce, the error committed was not prejudicial as to him. As to Hayes the same error was committed and we are not prepared to say that it was without prejudice as to him.

So far as the defendant Hayes is concerned, all that the state proved was this: He and Hett had been together in Colorado where they had committed some criminal acts. They came to Utah, and shortly prior to the homicide, at Beck's Hot Springs attempted to hold up the negro spoken of hereinbefore and who was in charge of the automobile. From the fact that they had committed a crime at an earlier hour that day, the presumption does not follow that at the time of the shooting of Sergeant Pierce by Hett the two were jointly engaged in a criminal enterprise. The evidence justified the jury in finding that the defendant Arthur Hayes was present when the shot was fired by Hett, but it is equally well established that Hayes, immediately upon the shot being fired, took to flight. The record before us contains nothing that shows that Hayes was previously aware of the purpose and intent of Hett to commit such crime; nothing to show that he in any way aided, abetted, or assisted in the killing or wounding of Sergeant Pierce; or that he advised or encouraged it. Nothing in the record shows that the defendants had associated themselves together for the purpose of carrying out a general scheme or plan embracing the commission of highway robberies, or that they had agreed to assist each other by committing such unlawful acts as were necessary for the purpose of protecting each other in a common criminal scheme. It is not shown that Hett and Hayes were acting in concert to resist arrest, or that they believed the officers were in pursuit of them for the attempted robbery which they **3** had committed near Beck's Hot Springs. The facts do not bring this case within the rule announced in *State v. Morgan*, 22 Utah, 162, 61 P. 527, in which it was held:

"Where the evidence shows that the defendant and another were associated together to rob and resist arrest, even to the killing of other persons, and in resistance one of the persons attempting arrest was killed, the killing, by whomsoever done, was the act of each and both of the conspirators, and defendant is chargeable therewith, whether he or his companion fired the fatal shot."

In fact there is nothing against Hayes except a previous criminal record, association with Hett in the commission of crimes in Colorado, and the attempted robbery at Beck's Hot Springs, and the suspicious circumstances of looking for the overcoat and guns the day after the tragedy.

It is the conclusion of this court that as to Hett the judgment of murder in the first degree should be, and it accordingly is, affirmed; and, as to him, the cause is remanded to the district court of Salt Lake county, with directions and instructions to fix the date of execution. As to the defendant Hayes the judgment is reversed and the cause remanded, with directions to the district court to grant him a new trial.

GIDEON, FRICK, and CHERRY, JJ., and ERICKSON, District Judge, concur.

THURMAN, J., did not participate herein.