### ROSE v. LINDERMAN.

1. FENCES—PARTITION FENCES—SUFFICIENCY—STATUTE.

Under section 2415, 1 Comp. Laws, a common worm or Virginia fence, which requires the use of a strip of land from three to five feet in width, is one which the owners of farm lands may lawfully build, and a stump fence, built in accordance with the common practice of the country or locality, and meeting the approval of the fence viewers, is likewise one that may be lawfully built without a neighbor having ground for complaint that the same is not within the statute.

2. SAME—OCCUPANCY OF LAND.

A landowner, in building that portion of a partition fence allotted to him, is not obliged to build it entirely on his own

land, but may build it half upon each side of the mathematical line, irrespective of the kind of fence or the amount of land it occupies, so long as it is a lawful fence.

3. SAME—UNEQUAL OCCUPANCY—REMEDY—EJECTMENT.
    Where the builder of a partition fence occupies an unequal portion of his neighbor's land therewith, ejectment will lie to oust him from the portion unlawfully occupied.

Error to Kent; Perkins, J. Submitted January 18, 1907. (Docket No. 65.) Decided March 5, 1907.

Ejectment by Washington Rose against Albert Linderman. There was judgment for defendant on a verdict directed by the court, and plaintiff brings error. Reversed.

*Rodgers & Rodgers*, for appellant.

*E. A. Maher*, for appellee.

HOOKER, J. The parties to this action own and occupy adjoining lands. Having a controversy over the fence between their respective premises, the defendant caused a view to be taken of the same by the fence viewers, and 50 rods of the line was apportioned to him, and 30 rods to the plaintiff. The defendant had or thereupon built a stump fence; the roots of the stumps resting upon his land, and the trunk portion of the stumps resting upon the land of the plaintiff. The undisputed evidence shows that the fence occupied a strip of land about 5 to 5½ feet wide, and that, while the partition line was at the ends about in the middle of the fence, for the most part of the way it was two-thirds or more upon the premises of the plaintiff. He brought this action of ejectment for the land so used, but suffered defeat; the court directing a verdict for defendant, upon the grounds that a stump fence was a lawful fence, that defendant had the right to use an equal amount of land on each side of the line for the fence, and that the land used was substantially equal. It is upon the correctness of these rulings, and the further

point—made first in this court—that ejectment will not lie in such a case, that the defendant relies for an affirmance of the judgment.

The statute relied upon in the case (1 Comp. Laws, § 2415) provides:

"All fences four and one-half feet high, and in good repair, consisting of rails, timber, boards, or stone walls, or any combination thereof, and all brooks, rivers, ponds, creeks, ditches and hedges, or other things which shall be considered equivalent thereto, in the judgment of the fence viewers within whose jurisdiction the same may be, shall be deemed legal and sufficient fences."

We think that the term "fence" has a well-understood meaning, and that an ordinary worm or Virginia fence is a fence that owners of farm lands may lawfully build, and which would require the use of a strip of land from three to five feet wide. We are also of the opinion that a stump fence, built in accordance with the common practice of a country or locality, would be one that might be lawfully built, and a neighbor could not complain merely upon the ground that such a fence was not within the statute, if it should meet the approval of the fence viewers. We understand that the plaintiff has signified that he had no objection to this fence, provided it were wholly upon defendant's ground. His counsel contend that the respective portions of all division fences should be placed wholly upon the land of the persons whose duty it is to maintain them, but that at all events such persons could not lawfully place more than one-half of such fences upon their neighbor's land.

We are of the opinion that this contention cannot be sustained. Not only is the right to build one-half upon the land of the adjoining proprietor indicated in *Newell* v. *Hill*, 2 Metc. (Mass.) 180, which plaintiff's counsel call the "leading case in the country," but the same rule is indicated in New York, from which State Michigan copied the main body of her statutes (*Ferris* v. *Van Buskirk*, 18 Barb. [N. Y.] 397; *Warren* v. *Sabin*, 1 Lans. [N.

Y.] 79), where it was declared that "under the stat-
ute it is clear upon principle and authority that the
owners are bound to erect and maintain a line or division
fence, and should make it equally on the lands of each."
Tyler in his work on Fences, p. 362, says:

"But, when the legislature speaks of fences, and divi-
sion fences, some idea of what a fence is is at once sug-
gested to the mind. There is no statute, for example,
authorizing the erection of a crooked or Virginia fence
upon the line as a division fence between adjoining propri-
etors, and yet, as a matter of fact, a large proportion of
all the division fences between adjoining farms in the
State of New York are the worm or Virginia fence, leav-
ing half the corners upon the land on one side of the
mathematical line, and the other half upon the other side.
This kind of fence has been built as a division fence in the
State, time out of mind, so that it has become a part of
the common law of the State that adjoining owners of
farms may erect such fences as division fences, occupying
the necessary quantity of land upon each side of the
mathematical line; and such fence is a fence, in contem-
plation of law, upon the line between the adjoining farms."

See, also, 19 Cyc. pp. 479, and notes 27 and 31, 480,
and note 34. In *Higgins* v. *Kingsley*, 82 Hun (N. Y.),
150, it was held that where posts were set equally on both
sides of a line, but wire netting was attached to rails set
into the sides of the posts on one of the lots, the fence
was not equally on each lot. This was a division fence.
See, also, *Kelly* v. *Donnelly*, 19 Pa. Super. Ct. 456, cit-
ing other cases. See, also, *Sparhawk* v. *Twichell*, 1
Allen (Mass.), 450, and 12 Am. & Eng. Enc. Law (2d
Ed.), p. 1052. We conclude, then, that a partition fence
may be built upon the line and may occupy equal portions
of land from the respective proprietors; that, while an
unequal occupancy does not necessarily deprive the struct-
ure of the character of a partition fence, a party is en-
titled to relief if the fence occupies a disproportionate
share of his land. We are also of the opinion that there
was testimony in this record justifying the inference that
the stump fence was a lawful and proper fence, so far as

its character was concerned, and that the defendant had a right to build it upon the line. We think that there was testimony tending to show that an improper use of plaintiff's land was made by reason of an inequality in the amount used.

The only other question relates to the nature of the remedy; it being said that ejectment will not lie, because the holding is not adverse, under some decisions that hold that title by adverse possession cannot be obtained by the maintenance of a partition fence off from the correct line, for the reason that the occupancy is permissive. We have no doubt that, irrespective of the question of acquiring title by occupancy, ejectment should lie for the unlawful occupancy of land, even if only for the purpose of building and maintaining a fence upon it. The case of *Higgins* v. *Kingsley* involved a division fence, and the action one at law for the recovery of a strip of land 2 inches wide by 105 feet long. Many times the question is disposed of in equity by injunction bill.

We do not mean to decide that this question is open on this record (see *Kennedy* v. *Owen,* 131 Mass. 431), having discussed the right to the remedy by ejectment instead, because the latter question would otherwise be open upon another trial.

The judgment is reversed, and a new trial ordered.

McALVAY, C. J., and CARPENTER, GRANT, and MOORE, JJ., concurred.