## MAYER v. FLYNN.

No. 2758.   Decided June 25, 1915.   Rehearing denied August 5, 1915
(150 Pac. 962.)

1. APPEAL AND ERROR—REVIEW—QUESTIONS OF FACT—FINDING.  In·
   equity cases the findings of the trial court prevail, unless it
   clearly appears from the record that they are against the weight
   of the evidence.   (Page 602.)

2. APPEAL AND ERROR—FINDINGS OF FACT—REVIEW.  Under the Con-
   stitution, the parties to every appeal in equity cases have the
   right to invoke the judgment of the Supreme Court upon the
   facts as well as upon the law, so that, where the findings on the
   evidence as to boundaries were not clearly against either the
   volume or the weight of the evidence, and are such that the Su-
   preme Court had practically the same opportunity to determine
   its weight as the trial court had, the Supreme Court must pass
   upon the evidence, determine the ultimate facts, and adjudicate
   the rights of the parties.[1]  (Page 602.)

3. BOUNDARIES—OCCUPANCY—FENCES AND PROJECTION OF ROOF.  In
   an action in equity to compel defendant to remove a part of his
   dwelling house from the plaintiff's premises, wherein the de-
   fendant claimed that plaintiff's house encroached upon his prem-
   ises, and it appeared that plaintiff and his predecessors had been
   in the actual possession and use of his premises so far as they
   were bounded in part by a fence and by the projection of the
   roof of his cottage, and had paid taxes upon that much of the
   premises at least, defendant was bound to respect plaintiff's
   right to that extent, and, in view of the disputed boundary and
   the uncertainty of its location, each was bound to respect the
   rights of the other to the extent that each had taken actual pos·
   session of ground, whether within or without the line described
   in their respective deeds.   (Page 606.)

4. ADJOINING LANDOWNERS—ENCROACHMENTS—SUIT IN EQUITY—RE-
   LIEF.  In such suit, where the claimed boundary lines of the par-
   ties overlapped, and there was an uncertainty respecting the
   actual location thereof, neither law nor equity required that
   either of the lines described in the deeds of the parties should
   be followed, but where no injury would result to the complain-
   ing party by granting him what he was entitled to according to

[1]*Savings Bank* v. *Fox*, 44 Utah 331; 140 Pac. 660;  *Campbell* v.
*Gowans*, 35 Utah 268; 100 Pac. 397; 23 L. R. A. (N. S.) 414; 19 Ann.
Cas. 660.

his possessory rights, and injustice would result if more were given, the doubt would be resolved in favor of the party on whom unnecessary injury would be inflicted by compelling the other to undo what he had done, though in good faith and under a claim of right, so that equity would limit each party to his possessory rights, and require the removal of so much of the roof of defendant's house as cast water perpendicularly upon the lower roof of plaintiff's cottage, regardless of the boundaries described in their deeds or surveys.   (Page 607.)

Appeal from District Court, Third District; Hon. *T. D. Lewis*, Judge.

Action by Andrew J. Mayer against J. F. Flynn.

Decree for plaintiff.   Defendant appeals.

REVERSED and REMANDED, with directions.

*W. R. Hutchinson* and *D. W. George*, for appellant.

*King & Nibley* and *P. T. Farnsworth*, Jr., for respondent.

FRICK, J.

The plaintiff, Mayer, commenced this action in equity to compel the defendant, Flynn, to remove a certain portion of the latter's dwelling house from the premises alleged to belong to the plaintiff.   The following plat, with a little explanation, will make clear the real situation of the respective claims of the parties:

The plaintiff alleged that he was the owner and in possession of the parcel of ground marked M on the plat, bounded by the figures 1, 2, 3, and 4, on which he had erected a one-story cottage marked C. He further alleged that the defendant had erected a portion of his two-story dwelling house, which is marked D on the plat, on plaintiff's premises, and prayed for a mandatory injunction requiring the defendant "to remove said foundation and wall from plaintiff's premises and to remove the said eaves and roof from said plaintiff's premises," etc., and for general relief. The defendant answered plaintiff's complaint, denying that his house or wall was on plaintiff's premises or any part thereof. As an affirmative defense the defendant averred that he was the owner of the parcel of ground marked F on the plat and bounded by the figures, 5, 6, 7, 8, 9, and 10. A trial to the court resulted in findings of fact, conclusions of law, and a decree in favor of the plaintiff requiring the defendant to remove that portion of his dwelling which encroached on plaintiff's premises as found by the court, and awarded plaintiff one dollar damages. The defendant appeals.

The court, in substance, found that the plaintiff was the owner and in possession of the parcel of ground bounded by the figures 1, 2, 3, and 4 as shown on the plat; that the defendant had willfully and wrongfully trespassed on the premises of the plaintiff by erecting a portion of the foundation of the two-story dwelling house aforesaid thereon, and by projecting a portion of the roof or eaves thereof over the roof of the plaintiff's cottage. In other words, the court, in effect, found that the defendant had encroached on plaintiff's premises by building a portion of the foundation of his house, together with the superstructure thereon as shown on the plat. The court made no findings respecting the defendant's allegations of ownership of the ground on which his dwelling stands. The defendant contends that the findings of fact are not supported by the evidence, and that they are contrary thereto, in that the evidence does not support the finding that the plaintiff owned or was in possession of the parcel of ground as found by the court and as outlined on the plat, but insists that the evidence shows that the defendant owns the ground

claimed by him, and that therefore he had not encroached on plaintiff's premises, but, on the contrary, claims that a part of plaintiff's house stands on defendant's premises.   By referring to the plat defendant's contentions, as just stated, are made clear.   He claims his ground extends on the south from figure 6 to figure 7, and thence runs north along the broken line to figure 8, and thence east to the figure 9, and thence north to figure 10.   By referring to the plat it will also appear that, if the court's findings and judgment shall prevail, then the defendant, to some extent at least, encroaches on the plaintiff's premises from about the point marked "a" on the north to the point marked "b" on the south.   If, however, it should be determined that the defendant's claim respecting his ownership shall prevail, then a portion of plaintiff's house marked C on the plat stands on defendant's premises.   The property in question is located in a mining town known as Bingham Canyon, in Salt Lake County.   The evidence is without dispute that the boundary lines generally in said town, including government lines, are more or less unsettled, and their exact location on the ground is frequently in dispute, and always has been; that a deep canyon passes through the town about the center thereof, and that the houses are built along both sides thereof, extending, in many instances, far up the sides of the mountains, which in many places are more or less precipitous, and thus the boundary lines between lots and houses are not, and in the nature of things cannot be, fixed with that degree of certainty that can be done on level ground.   Then, again, it appears that fixed and known monuments are few, and, where they have been set, they in some instances have been obliterated.   Plaintiff's house, it seems, was erected some 16 or 18 years before the trial, and he, with his familiy, had lived in it for about 8 years.   There is a fence extending back from the north end of plaintiff's property for about 19½ feet. The fence is indicated by the dotted line on the plat.   Plaintiff's claim respecting the location of his boundary lines is based upon a survey made by a Mr. Hansen, a surveyor, who took plaintiff's deed, and from the calls therein ran the boundary lines shown by the figures 1, 2, 3, and 4, commencing at figure 1 marked on the plat.   The defendant also produced

a surveyor who testified that he had located defendant's boundary lines according to defendant's deed, which, he claims, are as indicated by the figures 5, 6, 7, 8, 9, and 10 on the plat. The court, however, adopted the survey of the plaintiff's surveyor, and hence adjudged that the plaintiff was the owner of the ground bounded by the figures 1, 2, 3, and 4 aforesaid, and hence found that defendant's dwelling encroached on plaintiff's premises from about the point "a" to the point "b," and practically to the extent shown on the plat.

It has become the established rule of this court that in equity cases the findings of the trial courts prevail unless it is clearly made to appear from the record that the findings are against the weight of the evidence. While it is true that in this case the evidence is sufficient to support the findings, yet it is equally sufficient to support findings in favor of the defendant's contentions. From that statement it would seem that the evidence is in conflict, and where that is the case the findings of the trial courts should prevail, because of their opportunity to hear and see the witnesses while testifying, and they thus enjoy a great advantage over us in determining the weight to be given to the testimony or to any particular part thereof. It is largely, if not entirely, for the latter reason that the rule has been established as we have stated it.

But it is also true that, under the provisions of our Constitution, the parties to every appeal in equity cases have the right to invoke our judgment upon the facts, as well as upon the law, and thus, within the rule stated, we must pass upon the evidence and determine the ultimate facts. The rule is stated in *Savings Bank* v. *Fox*, 44 Utah, 331, 140 Pac. 660, and in *Campbell* v. *Gowans*, 35 Utah, 268, 100 Pac. 397, 23 L. R. A. (N. S.) 414, 19 Ann. Cas. 660. As already pointed out, the evidence relating to the boundary lines in question in this case would support a finding either in favor of those claimed by the plaintiff, and also in favor of those claimed by the defendant. Ordinarily, therefore, the findings of the court would prevail unless clearly against the weight of the evidence as before stated. The findings are, however, not clearly against either what may be termed the

volume or the weight of the evidence. The evidence relating
to the boundary lines is, however, of such a character that we
possess practically the same opportunity to determine its
weight as had the trial court. The evidence upon that phase
of the case is practically without dispute, and comes from
the surveyors who went upon the ground to trace the boun-
dary lines from the respective deeds of the parties. The ques-
tion is, therefore, one of law, rather than one of fact, in that we
must determine what the respective rights of the parties are
in law from what may be said to be the undisputed facts. In
making either one of the surveys much had to be assumed or
taken for granted. Plaintiff's surveyor, with commendable
frankness, conceded at the trial that the point marked by the
figure 1 on the plat, the starting point of his survey, was per-
haps no more certain as a starting point or monument than is
the point indicated by the figure 5 on the plat, which was the
starting point of the defendant's survey. These points con-
stituted the initial calls of the deeds of the respective parties,
and were therefore taken as starting points to trace the boun-
dary lines. While it is true that both surveyors referred to
other monuments and to what were assumed to be established
lines or monuments, yet both frankly conceded that there is
much doubt and uncertainty respecting the boundary lines
in the town of Bingham Canyon, and no one can say with cer-
tainty where any particular line is located upon the ground,
including, of course, government lines. Then, again, it ap-
pears that the property owners have paid no particular atten-
tion to the precise location of their boundary lines, for the
reason, as was stated at the trial by some of the witnesses,
that the nature of the surface ground was such that a few
inches or, in some cases, some feet more or less made no par-
ticular difference. The surface ground is shown to be rocky
and practically worthless. It is, however, insisted, and the
court apparently took that view, that the fence to the north-
east of the plaintiff's cottage indicated by the dotted line
aforesaid, which had stood there for about 13 years, at the
time of the trial was a reliable landmark from which to de-
termine the boundary line between the plaintiff and the de-
fendant. While fences are always to be regarded as impor-

tant, if not absolutely controlling, in determining boundary
lines, yet it does not always follow that the claimants may
insist on anything beyond the fence line in either direction.
So far as the fence marks the supposed boundary line in this
case, it is to be given proper effect as in all cases of disputed
boundary lines. What was apparently done, however, by the
court was to assume that the true boundary line between the
properties of the plaintiff and the defendant continued in-
definitely in the direction the fence pointed to the south. It
is in making that deduction that we think the court erred.
It may, no doubt, be true that the direction in which a fence
is constructed is more or less persuasive evidence that the
boundary line marked by it for a part of the distance con-
tinues beyond the fence in the same direction to the end of the
party's land. This is, however, a mere inference, and, under
some circumstances, a very weak one. If the fence is placed
upon the true boundary line, or if it is known to have been
erected as pointing in the direction of that line, the inference
may be strong—may even be controlling; but, if it is not
placed on the true boundary line, nor erected in the direction
of that line, it may perhaps be used only for the purpose of
defending any attempted aggression by a neighbor who claims
beyond the fence at the point where the fence in fact exists.
Such is the case here. The defendant's claim of where the
boundary line between him and the plaintiff is located is just
as well supported as is the claim of the plaintiff in that regard.
One claim, therefore, offsets the other. The plaintiff, however,
has the advantage over the defendant in so far as his fence
and his house mark the boundary line. The plaintiff has been
in actual and undisputed possession of all that part of his
parcel of ground upon which his house stands, including the
projection of the roof and that which lies west of the fence.
Had the fence extended south to the south limit of plaintiff's
land, or even to the end of his cottage, he, no doubt, could
successfully claim all that portion lying west of the fence by
adverse possession, regardless of where the true boundary
line between his and the defendant's is located, and irrespect-
ive of whether defendant's line, in truth and in fact, extends
westward to the broken line as claimed by him. Nor is it a

fact that plaintiff's right to claim to the boundary line fixed by the court has been acquiesced in by the defendant's predecessors in interest. The evidence shows without dispute that at least one, and possibly two, who owned defendant's property before he obtained the title, as well as the defendant himself, disputed plaintiff's claim to any ground east of the east side of his cottage. Indeed, a Mr. Gibbons, a witness for the defendant, testified that he notified the plaintiff that the fence in question was crowded east beyond the true boundary line. Be that as it may, however, the fact remains that the plaintiff himself admits that he did not know where the boundary line between him and the defendant was located until after defendant's house was at least partially, if not wholly, completed, which was after or at the time the Hansen survey was made for the plaintiff as before stated. The defendant, however, disputed the correctness of that survey and insisted that plaintiff's cottage, in part at least, stood on ground belonging to the defendant, but that he had no desire to interfere with plaintiff's possession nor to encroach upon his ground in any way, but insisted that there was plenty of room for both of them. At all events, he contended that he had not placed, and had not intended to have placed, his dwelling beyond the boundary line, nor even quite up to it. To avoid such a result the defendant had the contractor calculate the exact distance that the dwelling could be placed to the west without encroaching on plaintiff's premises and without extending the roof over the roof of plaintiff's cottage, which was lower than the roof of defendant's house. There is practically no dispute in the evidence that the defendant sought to avoid encroaching upon plaintiff's land, but it is equally clear that the defendant did, to some extent at least, encroach upon plaintiff's premises, and that the roof, particularly at the south end thereof, extends a few inches over the roof of plaintiff's cottage. By referring to the plat the fact in that regard will be made clear.

The plaintiff and his predecessors in interest had been in the actual possession and use of his premises, at least to the extent that same are bounded by the fence and the projection of the roof of his cottage on the east, regardless of where the boundary line was located. Plaintiff had paid the taxes upon

that much at least.   The defendant was and is bound to
respect plaintiff's right to that extent.   In view of the        3
disputed boundary and the uncertainty of its location,
and in view that the premises of the plaintiff and those of the
defendant, according to their respective deeds, overlapped,
and because there never was an agreed boundary line either
express or implied, one must respect the rights of the other to
the extent that each has taken actual possession of ground,
whether within or without the lines described in their respect-
ive deeds, and each must yield to the possessory rights of
of the other to that extent.   To the extent, therefore, that the
defendant has projected the roof or the eaves of his dwelling
over the roof of plaintiff's cottage, to that extent has the form-
er exceeded his legal rights and has to the same extent invaded
the legal rights of the plaintiff.

The defendant insists that a government section line passes
across both plaintiff's and defendant's properties at the point
and in the direction indicated by the figures 8 and 9 on the
plat, and that such line determines the correctness of defend-
ant's survey.   Upon the other hand, the plaintiff's counsel
strenuously insists, and spent much time at the hearing to
convince us, that said section line is located on the ground
some distance to the north and outside both properties, and
that therefore the plaintiff's survey should control.   The very
fact that there is such a dispute shows the uncertainty of the
boundary lines in the town of Bingham Canyon, and it is that
uncertainty which determines the error in the court's conclu-
sions in not limiting the parties to the ground of which they
were in actual possession, as pointed out in this opinion.

We remark that, if the conclusions reached by the trial
court shall be followed in all cases of disputed and overlap-
ping boundaries in the town of Bingham Canyon, then, in
view of the evidence, there would be but few residents who
would be certain that they would not be required by some
court to remove a portion of their buildings from the premises
because claimed by their neighbors, or one or more of them.

It is not true that where, as in this case, boundary lines of
coterminous owners overlap, and where there has been a dis-
pute and uncertainty respecting the actual location of such

lines, the law requires that either the lines as described in the deed of one of the parties or that those described in the deed of the other shall be followed. And what is not required by the law in that regard certainly is not required in equity. In a case like this, where no permanent, in fact no, injury can result to the complaining party by granting him what he is entitled to according to his possessory rights, and injustice would result if more were given, the doubt, if any, may well be resolved in favor of the party on whom unnecessary injury would be inflicted by compelling him to undo what in good faith and under a claim of right he did, although he in some slight degree exceeded the legal limits of his rights. The rules of both law and equity, under such circumstances, can be vindicated and justice reflected by compelling the party in fault to undo that, and that only, which equity and good conscience requires. Even in cases of doubt and uncertainty respecting boundary lines the trespasser may not plead good faith as a defense, yet, in order to avoid a removal of his building, he may rely on the fact that the location of the boundary line between him and his neighbor was uncertain, and the courts, especially courts of equity, may well consider that fact in limiting the other party to his possessory rights, rather than to be governed by the descriptions in his deed, where the lines described therein are shown to be no more reliable than are those described in his neighbor's deed, and where the lines as described in the deeds clearly overlap. In such cases it is still true that ''in a moral sense that is called equity which is found 'ex equo et bono,' in actual justice, in honesty, and in right.'' We think that natural justice demands that under the circumstances disclosed by this record the parties, in respect to their respective claims against each other, should be limited to their possessory rights. Of course, where the boundaries described in the title papers are tied to reliable and fixed monuments, so that such boundaries can with certainty be located on the ground, one may not go beyond such boundaries and hope to escape from being required to undo what he has done, under the plea that it was done in good faith and by mistake. The invasion of another's property rights in law, if not in morals, constitutes

a trespass, and the trespasser is civilly liable, whether it occurred in good faith under mistake of fact or law or otherwise. In view of the facts, however, that doctrine has no application here, and we refuse to apply it. The defendant, therefore, should be required to cut off and remove that portion of the eaves of his roof which extend over the roof of the plaintiff's house. While it is shown in the evidence what that distance is at the extreme south end of defendant's dwelling, yet it does not clearly appear just what distance northward from the south end of the roof the projection over plaintiff's roof extends. The court, therefore, should find: (1) Just how far defendant's eaves project over plaintiff's roof; and (2) what distance to the north such projection continued. The defendant should be required within a reasonable time to be fixed by the court to cut off or remove such portion of the eaves of his roof as project over plaintiff's roof; that is, that at least so much of the defendant's projecting roof be removed, so that there shall be sufficient space between the edges of the two roofs to prevent the water dripping from the defendant's eaves from falling perpendicularly onto plaintiff's roof below. That part of the judgment requiring the defendant to pay $1 damages is approved and affirmed.

The judgment is therefore reversed, and the cause is remanded to the district court, with directions to make findings of fact and conclusions of law in conformity with the conclusions stated in this opinion, and to enter judgment as before stated; neither party to recover costs on appeal.

STRAUP, C. J., and McCARTY, J., concur.