RICH v. STEPHENS.

No. 5096. Decided May 2, 1932. (11 P. [2d] 295.)

*L. A. Wade,* of Ogden, for appellant.

*De Vine, Howell & Stine,* of Ogden, for respondent.

ELIAS HANSEN, J.

This is an appeal from a decree and judgment made and entered by the district court of Weber county, Utah. Plaintiff sought and was awarded both legal and equitable relief. He secured a money judgment in the sum of $75 for damages to his building caused by water draining against the north wall thereof from defendant's building. Defendant was ordered to provide the necessary means for preventing, and was perpetually enjoined from causing or permitting, the water which collected in the light courts or recesses of her building from draining onto and against the wall of plaintiff's building. Defendant appeals from the judgment and decree thus made and entered against her. She claims that the trial court erred in overruling her general demurrer to plaintiff's complaint, in making various of its findings of fact, in excluding evidence offered by her, and in failing to find the issues in her favor and entering judgment accordingly. This litigation is bottomed upon conflicting claims as to the location of the boundary line between land owned by plaintiff and land owned by defendant.

There is no issue joined by the pleadings and no conflict in the evidence as to these facts: Plaintiff and defendant own adjoining tracts of land abutting on Washington avenue on the east side thereof in Ogden City, Weber county, Utah. Plaintiff's land is in lots 3, 4, and 5; and defendant's land is in lots 6 and 7. All of these lots are in block 12 of plat

A, Ogden City survey of building lots. Plaintiff's land is south of the land owned by the defendant. More than thirty years prior to the commencement of this proceeding a substantial fence was constructed to mark the boundary line between the land now owned by the plaintiff and the land now owned by the defendant. Ever since its construction, the fence has been acknowledged as the boundary line by plaintiff and defendant and by their predecessors in interest and in title. During the year 1911, a part of the boundary line fence was removed and plaintiff built a cement copying extending about forty feet east from Washington avenue along the boundary line theretofore occupied by the fence. In 1913 defendants's predecessor in title erected an apartment house named the Argyle upon the land now owned by defendant. The Argyle Apartment was so constructed that three recesses or light courts extended into the south wall thereof. These light courts or recesses were each about twenty-five feet long and extended back into the south wall of the building about four feet. They extended from the bottom of the second story upward to the sky. The water from the rain and snow which fell upon the bottom of these light courts drained off on the south side of the building. In 1928 plaintiff removed the cement coping which had theretofore marked the boundary line and erected a large brick building on his premises, the north wall of which was placed against the south wall of the Argyle Apartment and extended up four or five feet above the bottom of the light courts of the Argyle Apartment so that the water from the rain and snow which fell on the bottom of the light courts could not longer drain out to the south as it was wont to do. As a result the water from rain and snow seeped and soaked into the newly constructed north wall of plaintiff's building. In order to prevent injury to his building from the rain and snow water, plaintiff caused a composition roof flashing to be placed on the outside of the north wall of his building opposite and running the full length of the three light courts. The water from the rain and snow,

being thus prevented from seeping into the wall of plaintiff's building, leaked through the bottom of the light courts and into and through the ceiling of the bottom story of defendant's apartment house to its damage. The composition roof flashing which plaintiff caused to be placed on the north wall of his building was destroyed by some one, and the water caused by the rain and snow which fell in the light courts of the Argyle Apartment again seeped into the wall and ceiling of plaintiff's building. There is some evidence which tends to show that defendant's agent destroyed the composition roof flashing. Other facts which we deem material to a decision will be noted later in this opinion.

Plaintiff brought this action to recover for the damage to his building caused by the water which thus drained against it and to enjoin the defendant from permitting or causing the same to continue to flow against his building. Defendant answered the complaint and filed a counterclaim against the plaintiff. In her counterclaim she alleges that the boundary line between her premises and the premises of the plaintiff is ten inches south of the south side of the south wall of her building on the west thereof and one and five-tenths feet on the east thereof; that the north wall of the plaintiff's building is on her land; that by reason of plaintiff erecting the north wall of his building upon her land she has been denied the use and occupancy of her property; that plaintiff's building has cut off the light and air from the Argyle Apartment—all to her damage in the sum of $10,000. That because plaintiff constructed the north wall of his building on her land and against her apartment house, water from rain and snow has been prevented from draining from the recesses of her building thus rendering some of the apartments thereof damp and unsanitary, thereby reducing their rental value—all to her damage in the sum of $2,200. Defendant prayed for a money judgment against the plaintiff, for a mandatory injunction requiring plaintiff to remove the north wall of his building from defendant's land and

that plaintiff be enjoined and restrained from asserting any title or interest in the land claimed and owned by defendant.

Plaintiff replied to defendant's counterclaim. The reply denies generally the allegations of the counterclaim. As an affirmative defense he alleges that defendant is estopped from asserting any interest in the land occupied by his building because neither the defendant nor her predecessor in interest claimed any of the land south of the south wall of the Argyle Apartment prior to the erection of plaintiff's building. That plaintiff erected his building in good faith at an expense of more than $25,000, and that to remove the north wall thereof and erect another wall would cost not less than $3,000. That defendant is also estopped from asserting any claim to the land occupied by plaintiff's building because her predecessor in interest brought a suit against the plaintiff and others to quiet title to a right of way in the rear of the apartment house now owned by the defendant, wherein it was alleged that the apartment house now owned by the defendant occupied the entire sixty-six foot frontage on Washington avenue. That in such suit the plaintiff appeared and filed a demurrer, which demurrer was sustained and the suit dismissed. That because of such proceedings the boundary between the property now owned by defendant and the property owned by plaintiff was finally adjudicated and settled.

It is urged on behalf of the appellant that the complaint is fatally defective because it is alleged therein that the north wall of the plaintiff's building is *approximately* on the north boundary line of plaintiff's premises. Elsewhere in the complaint it is alleged that plaintiff's building is located upon lands owned by him. If, as is alleged, plaintiff owns the premises claimed by him and the building located thereon, and the defendant has wrongfully injured such building, plaintiff's right to redress is complete without regard to where the walls of his building are located with respect to the boundary line

of his land. The demurrer to the complaint was properly overruled.

Both of the parties to this litigation rely upon a long-established boundary line as fixing the extent and limit of their respective premises. The principal question which divides the parties is: Where were the fence and cement coping which formed the boundary line between the lands of the parties located with respect to the south side of the south wall of the Argyle Apartment House? Plaintiff called sixteen witnesses, twelve of whom testified that defendant's apartment house was built up to, or nearly up to, the north side of the boundary line fence and cement coping. Defendant called nineteen witnesses, seventeen of whom testified that there was some space between the south wall of the Argyle Apartment and the boundary line fence and coping. Such distance was variously estimated by defendant's witnesses, some placing it as narrow as seven inches, some as wide as eighteen inches. A number of photographs, some offered by the plaintiff, and some offered by the defendant, were received in evidence. These photographs were taken before this controversy arose, but unfortunately none of them show distinctly the relative position of the cement coping and the south wall of the Argyle Apartment. A plat made by a former surveyer of Ogden City was received in evidence, but no surveyor was called to testify as to the location upon the ground of the true boundary line. It would serve no useful purpose to set out in this opinion a detailed summary of the testimony of each of the numerous witnesses who testified at the trial. Suffice it to say that the testimony of most of the witnesses who were called by both sides to this controversy appear, from a reading of the transcript, to be worthy of belief. There is, however, a sharp conflict in the testimony, and therefore some of the witnesses must of necessity have been mistaken. It is the duty of this court to review and weight the evidence touching the issue as to the location of the boundary line between the premises

418

of the parties to this litigation, but the findings of fact made by the trial court should not be disturbed unless we are satisfied that they are wrong. This court has frequently so held. The law announced in the case of *Mayer* v. *Flynn*, 46 Utah 598, 150 P. 962, is typical of such holdings. It is evident from the trial court's findings of fact that the learned trial judge believed the testimony of plaintiff's witnesses as to the location of the cement coping and boundary line fence. According to such testimony the north side of the cement coping and the north side of the boundary line fence coincided, or nearly concided, with the south side of the south wall of the Argyle Apartment House. Upon this record we are not justified in finding that the cement coping and the boundary line fence were not located, before their removal, where plaintiff's witnesses testified they were located.

The testimony of plaintiff's witnesses, especially when viewed in the light of the other evidence in the case, does not, however, justify a finding that the south side of the south wall of the Argyle Apartment was south of the north side of the fence and coping which both of the parties agree marked the boundary line between their premises. The evidence shows without conflict that in excavating for the basement of the Argyle Apartment the cement coping and the boundary line fence were not removed. There is evidence to the effect that after the basement for the Argyle Apartment was excavated a part of the boundary line fence slid into the excavation. Some of the witnesses testified that this was caused by the irrigation of plaintiff's premises. The cement coping was not interfered with in the construction of the Argyle Apartment. The evidence as to the location of the cement coping is all to the effect that it was placed along the line of the old fence which marked the boundary line. The oral testimony and the photographs which were received in evidence show that the old boundary line fence was constructed of posts set into the ground with 2"x4"s or similar pieces of

lumber fastened horizontally to the posts, and pickets were fastened perpendicularly to the horizontal pieces of lumber. Various witnesses testified as to the width of the cement coping. Some estimated it to be as narrow as four inches; others placed it as wide as eight inches. The evidence shows without any conflict that plaintiff's building now occupies all of the strip of land that was formerly occupied by the boundary line fence and cement coping. Such fact suggests this pertinent inquiry: Has plaintiff title to the whole of the land formerly occupied by the boundary line fence and coping? The law seems to be that under a statutory provision such as Comp. Laws Utah 1917, § 115, requiring that coterminous landowners shall each build or pay his proporation of a partition fence, applies to land occupied by the boundary fence as well as to the material which is used in its construction. *Hoar* v. *Hennessy*, 29 Mont. 253, 74 P. 452; *Kelly* v. *Donnelly*, 19 Pa. Super. Ct. 456; *Dysart* v. *Leeds*, 2 Pa. 488; *Rose* v. *Linderman*, 147 Mich. 372, 110 N. W. 939, 11 Ann. Cas. 198; *Higgins* v. *Kingsley*, 82 Hun, 150, 31 N. Y. S. 100; *Pettigrew* v. *Lancy*, 48 Mo. 380; *Ferris* v. *Van Buskirk*, 18 Barb. (N. Y.) 397; *Newell* v. *Hill*, 2 Metc. (Mass.) 180. The law also seems to be well settled that a conveyance of land bounded by a way, a river, a ditch, a wall, a tree, or a fence, in the absence of proof of a contrary intention, carries title to the center of such object. *Boston* v. *Richardson*, 13 Allen (Mass.) 146; *Hatcher* v. *Richmond & C. B. Ry. Co.*, 109 Va. 356, 63 S. E. 999; *Schwalm* v. *Beardsley*, 106 Va. 407, 56 S. E. 135; *Warfel* v. *Knott*, 128 Pa. 528, 18 A. 390; *Sacone* v. *West End Trust Co.*, 224 Pa. 554, 73 A. 971, 24 L. R. A. (N. S.) 539. In the instant case it is agreed between the parties that the fence. in question was constructed for a boundary line fence. In such case it would seem that it might well be presumed, in absence of proof to the contrary, that the fence occupied equal amounts of the coterminous landowners' property. If a conveyance of land bounded by a fence carries title to the middle of the

fence, by analogy, it would seem to follow that where, as in the instant case, adjoining landowners agree that a fence marks the boundary line between their lands, the middle of the fence must be held to be the true boundary line in the absence of any proof to the contrary. Indeed, it is difficult to see how in justice to the parties any other or different rule could be applied. The rule that equality is equity applies in such case. Moreover, in the instant case there is evidence tending to show that the true boundary line between the premises here involved ran along the middle of the old boundary line fence. There is no evidence to the contrary. Plaintiff offered in evidence a certificate of survey of his premises made July 28, 1906, by A. F. Parker, who, the evidence shows, was at the time of the survey the city surveyor of Ogden City and who at the time of the trial was dead. The northern boundary line of plaintiff's premises is marked thus "x x x" on the plat which is a part of the certificate of survey. On the bottom of the certificate is the following notation: "Fences shown thus x x x measure to center of same." It would thus seem that Mr. Parker found the true northern boundary of plaintiff's land to be along the middle of the old boundary line fence. It is also significant that while defendant holds the record title to sixty-six foot frontage on Washington avenue, the Argyle Apartment House is somewhat less than sixty-six feet, although how much less is not made to appear. The record is silent as to whether plaintiff is in possession of more or less land than his record title calls for. In the light of the law applicable to the facts in this case, as disclosed by the evidence, the true boundary line between the premises of plaintiff and defendant ran along the middle of the old boundary line fence and the cement coping.

As already indicated, the evidence shows that the cement coping was between four inches and eight inches wide. It is a fair inference to be drawn from the evidence that the boundary line fence was about the same width. It follows

that the true boundary line here in controversy is at least from two to four inches south of the south side of the south wall of defendant's building.

It is further urged on behalf of the plaintiff that the defendant is estopped from claiming any right in the land south of the south side of the south wall of the Argyle Apartment. In his reply to plaintiff's counterclaim, as already indicated in this opinion, plaintiff pleaded an estoppel. In support of such pleaded estoppel evidence was offered on behalf of the plaintiff which tends to establish these facts: That neither the defendant nor her predecessor in interest made known to the plaintiff that they claimed any of the land south of the Argyle Apartment until after plaintiff completed the construction of his building; that after the Argyle Apartment was constructed plaintiff used the land up to the south wall of the Argyle Apartment for a garden and flower bed without any objection on behalf of the defendant or her predecessors in title; that when the basement for the Argyle Apartment was being excavated in 1913, plaintiff was informed by one George Stephens, who had charge of the work, that they were excavating up to the boundary line; that in April, 1917, one Effie M. Campbell, who was then the owner of the Argyle Apartment, brought a suit in the district court of Weber county against the plaintiff herein and others whereby she sought to quiet title to an easement to the rear of the Argyle Apartment House; that in her complaint in that suit Mrs. Campbell alleged that her apartment house occupied "the entire 66 feet frontage on Washington Ave."; that plaintiff herein demurred to the complaint in the former suit; that the demurrer was sustained and the suit dismissed. Evidence was offered on behalf of the defendant which is in conflict with much of the evidence offered by the plaintiff in support of his plea of estoppel. George Stephens denied that he informed the plaintiff that they were excavating the basement up to the boundary line. He further testified that a strip of land seventeen inches wide was left

between the south side of the south wall of the Argyle Apartment and the boundary line. Evidence was also offered on behalf of defendant that notice was given to the contractor who was in charge of the construction of plaintiff's building that defendant owned the land upon which the north wall of plaintiff's building was being constructed; that such notice was given while plaintiff's building was in the course of construction. Plaintiff testified that he let the contract for the construction of his building and that the contractor did not notify him of defendant's claim until after his building was constructed. The trial court found the issues raised by the pleaded estoppel in favor of the plaintiff. Obviously, any statement made by George Stephens could not work an estoppel because he was not the owner of the premises now occupied by the Argyle Apartment at the time the alleged statement was made and there is no evidence that he was authorized by the then owner of the premises to make such statement. Nor can it be said that the suit begun by Mrs. Campbell estops the defendant from asserting title to the strip of land in ·controversy. There was no adjudication of the question which divides the parties in this litigation. The southern boundary line of the premises now owned by the defendant was not in issue in the former action.

There is, however, a rule of law which is applicable to the evidence in the instant case. It is said in 3 Thompson on Real Property § 2506, that:

"As a general rule, one who stands by and sees another, under claim of right, make expenditures for improvements under circumstances which would call for notice or protest, is estopped from thereafter asserting his own title against such other."

In support of the text numerous cases are cited in a footnote, among them the case of *Clark* v. *Kirby*, 18 Utah 258, 55 P. 372. It is said in 9 C. J. 241 that:

"One who knows the true boundary between himself and an adjoiner, but allows the latter, without protest, to make improvements

up to what he supposes to be the true line will be estopped to dispute such line."

The text finds support in the cases cited in the footnote. If the evidence of plaintiff and his witnesses is to be believed, this case, in the main, falls within the rule just quoted. There are, however, some facts established beyond controversy by the evidence in the instant case which preclude the plaintiff from being entitled to all that he claims for his plea that defendant is estopped from claiming any interest in the strip of land in controversy. The oral testimony and the photographs which were received in evidence show that lumber similar to a window sill was placed in the south wall of the Argyle Apartment. This lumber extends out an inch or two beyond the outside of the south wall and ran the whole length of the light courts. From the time the Argyle Apartment was constructed in 1913, until defendant's building was erected in 1928, the water from the rain and snow which fell into the light courts or recesses of the Argyle Apartment drained out to the south over the lumber which was placed in the wall at the bottom of the light courts and fell onto the strip of land which is in dispute. The evidence further shows that a capping was placed along the top of the walls of defendant's building. This capping extended about three and one-half inches south of the south wall of the apartment house except where the light courts were located. During the fifteen years that elapsed between the construction of the Argyle Apartment and the erection of plaintiff's building this condition continued. There was no occasion for defendant to notify plaintiff that she claimed the right to maintain her building in the manner that it was maintained. Plaintiff may not be heard to say that he was ignorant of such fact because it was obvious. A right of one landowner may be acquired to maintain a projection such as an eave over the premises of an adjoining landowner. *Vincent* v. *Michel,* 7 La. 52, 26 Am. Dec. 496; *Cherry* v. *Stein,* 11 Md. 1; *McCleery* v. *Alton,* 29 Ohio Cir. Ct. R. 97; *Grace*

*M. E. Church* v. *Dobbins,* 153 Pa. 294, 25 A. 1120, 34 Am. St. Rep. 706. Sufficient time has not elapsed since the erection of defendant's building to have acquired an easement to permit the water from the light courts of her building to drain onto the disputed strip of land, but the fact that she has used the land in controversy for such purpose ever since the Argyle Apartment was constructed and ever since the boundary line fence was removed precludes the plaintiff from successfully interposing the plea that defendant is estopped from claiming any interest in the strip of land in controversy. If an easement may be acquired by one landowner to maintain the eaves of his house over an adjoining landowner, a fortiori the defendant is not estopped from asserting her right to have the water from the light courts of her building drain onto the strip of land owned by her. Defendant had the right to the use of no less than two inches of land covered by the fence and coping which marked the boundary line between her premises and the premises of the plaintiff. There is no evidence in the record brought here for review which shows, or tends to show, that she has lost that right, but on the contrary all of the evidence shows that she has continued to exercise such right up to the time plaintiff constructed the north wall of his building. It may be noted that a space two inches wide under the light courts between the Argyle Apartment and defendant's building would take care of the water which drains from the light courts and a space of four inches would be more than ample for such purpose. When plaintiff caused the north wall of his building to be placed against the south wall of defendant's building the injury which plaintiff complains of and the injury, if any, caused to the Argyle Apartment by the water from rain and snow which fell in the light courts, was rendered inevitable. Upon this record defendant is not liable for the injury complained of by the plaintiff nor is the plaintiff entitled to any equitable relief. On the contrary, defendant is entitled to a mandatory injunction requiring plaintiff to make proper

provision for draining the water caused by rain and snow from the light courts of defendant's building. If defendant has sustained any damage because of the wrongful acts of plaintiff in preventing the water caused by rain and snow from draining out of the light courts, she is entitled to a money judgment against the plaintiff for the damage thus caused to her building. This record does not entitle the defendant to the other equitable relief prayed for. In the view we take it becomes unnecessary to consider or pass upon defendant's other assignments of error.

From what has been said it follows that the judgment and decree appealed from should be, and the same are, reversed. This cause is remanded to the district court of Weber county with directions to recast its findings of fact and conclusions of law to conform to the views herein expressed and to enter a decree directing that plaintiff immediately make suitable provision so that the water caused from rain and snow falling in the light courts of defendant's building will drain therefrom without injury to defendant's building. It is further directed that a new trial be granted for the purpose of ascertaining the amount of damage, if any, that defendant may have sustained because plaintiff has wrongfully so constructed his building that the water caused by rain and snow has been prevented from draining from the light courts of defendant's building. Defendant is awarded her costs.

CHERRY, C. J., and STRAUP, FOLLAND, and EPHRAIM HANSON, JJ., concur.