# BEAR RIVER STATE BANK v. MERRILL et al.

No. 6323.   Decided December 23, 1941.   (120 P. 2d 325.)

See 9 C. J. S. Banks & Banking, sec. 466; 3 Am. Jur., 456.

*Irvine, Skeen & Thurman,* of Salt Lake City, *Newel G. Daines,* of Logan, and *L. Delos Daines,* of Salt Lake City, for appellant.

*Preston & Harris* and *Young & Bullen,* all of Logan, for respondents.

LARSON, Justice.

This is an appeal from a judgment of the District Court dismissing the plaintiff's complaint. Plaintiff, Bear River State Bank, formerly the Wellsville State Bank, sued the defendants, former officers and directors of the Wellsville bank, claiming assets of the bank had been converted by the defendants, and seeking an accounting. The claim arose out of two transactions, the facts of which we state briefly.

The first transaction arose because of the impaired capital of the Wellsville State Bank in 1933. Notes of the face value of approximately $15,000 had been eliminated by the

State Banking Department. The total amount of the impairment was $16,500. The bank borrowed $10,000 from the Reconstruction Finance Corporation, but it needed an additional $6,500. In December, 1933, the list of charged off notes of the Wellsville Bank were transferred to three of the then directors who supplied the $6,500 to restore the capital of the bank so it could qualify for the Federal Deposit Insurance Corporation by the first of January, 1934. These notes were kept by the cashier who acted as collection agent, paying the three directors as the amounts were collected. By affidavit to the Reconstruction Finance Corporation the president and cashier stated that the bank was not indebted for this "contribution" of $6,500 that had been added to the capital. At the annual stockholders' meeting the following January 9, 1934, the facts of this transaction were presented to the stockholders present, who represented 125½ shares of the total 200, and confirmed by their unanimous vote.

Appellants contend that the respondents had held out and represented that the $6,500 paid by the three defendants to build up the capital structure of the bank was a "contribution" and that the respondents were estopped to claim that it was paid as consideration for the purchase of approximately $15,000 worth of notes. This contention is unsound. In the first place it was shown in the trial court that the stockholders at the annual meeting were informed of the "sale" on January 9, 1934, so they had not relied upon the representation that the three men had donated the $6,500 to the bank, and to the stockholders incidentally. They were not misled and depositors did not know of the transaction so they cannot be said to have been misled. The Reconstruction Finance Corporation and State Banking Department were interested in an additional $6,-500 being put into the bank's capital. They are not parties to this suit and are no longer interested in the transaction. The concern of the R. F. C. at the time was that there should not be an additional loan to the bank from individuals be-

cause this would not remove the impairment in the capital. For the three men to have put in the $6,500 as a loan to secure the $10,000 from the Reconstruction Finance Corporation, and then removed the $6,500 from the bank's assets, would have been fraud on the federal agency. As it was, the sale was advantageous to the bank in that it enabled the bank to continue in business. The respondents are not estopped to show that the transaction was in fact a sale. the trial court so found and there was sufficient evidence to support this finding.

In June, 1935, the residents of Tremonton decided they wanted a bank in their town. The Wellsville bank again had an impaired capital, and the bank commissioner and interested parties from the two towns started negotiations for its reorganization and removal to Tremonton. The articles of incorporation were amended, changing the name to the Bear River State Bank, the principal place of business to Tremonton, Utah, and the capital was increased from $20,00 to $25,000. During the first part of August, the bank commissioner and representatives from the two towns segregated the Wellsville bank's assets, putting in one pile those the banking department would not allow to be transferred to the new bank but which could be sold to the Wellsville stockholders. These "slow assets" consisted of real estate in the Wellsville community, the old bank building, and some notes. The assets involved in this second transaction were transferred to a committee of three directors as trustees for the benefit of the Wellsville stockholders. It was agreed that the Wellsville stockholders would surrender half of their stock to the bank representing $10,000, which would be sold to the Tremonton residents along with the additional $5,000 worth of new stock. Two shares of the Wellsville State Bank stock were exchanged for one share of stock in the Bear River State Bank. The Wellsville stockholders were to be reimbursed for the shares so surrendered from the receipts of the sale of the "slow assets" by the committee. The balance of the charged off notes involved in the first transac-

tion remaining uncollected in 1935 were turned over to this committee for disposal with the "slow assets" of the bank, under an understanding that the three purchasers would take a balance payment, the total of all payments to them to be $6,500, they having waived to the new bank any receipts in excess of $6,500. This was done and a small balance was put into the funds of the bank under "structure account." From the receipts of the sale the Wellsville stockholders were paid $82 a share for the stock surrendered to the bank. The trial court found that the officers, directors and stockholders of the plaintiff corporation at the time of the reorganization were fully acquainted with the assets of the bank and with the plans for the reorganization, and that their failure to protest the method of liquidating the securities and the sale of the real estate from August, 1935, until September, 1937, constituted such neglect and laches as to make it inequitable to permit plaintiff now to maintain this action.

The findings of the trial court will not be upset. This court recognizes the fact that the trial court saw the witnesses, observed their demeanor, and was in a better position to judge their credibility than is an appellate court with only the transcript as a basis for its conclusions. It is the duty of this court to review and weigh the evidence in an action for legal and equitable relief and the findings of the trial court are not disturbed unless wrong. *Rich* v. *Stephens,* 79 Utah 411, 11 P. 2d 295; *Smith* v. *Edwards,* 81 Utah 244, 17 P. 2d 264. And where it is claimed that the facts found by the trial court are not supported by the evidence the appellants are entitled to a full review of the evidence and a determination by the Supreme Court. *Zuniga* v. *Evans,* 87 Utah 198, 48 P. 2d 513, 101 A. L. R. 532; *Williams* v. *Peterson,* 86 Utah 526, 46 P. 2d 674. However, findings based upon conflicting testimony such as is presented in the present case, will not be disturbed unless it appears that the trial court has misapplied proven facts or that the findings are clearly against the weight of

the evidence. *Jenkins* v. *Nicolas,* 63 Utah 329, 226 P. 177; *Olivero* v. *Eleganti,* 61 Utah 475, 214 P. 313; *Stanley* v. *Stanley,* 97 Utah 520, 94 P. 2d 465; *Tanner* v. *Provo Reservoir Company,* 99 Utah 139, 98 P. 2d 695.

Judgment affirmed. Costs to respondents.

MOFFAT, C. J., and WOLFE, McDONOUGH, and PRATT, JJ., concur.