## PIXTON v. DUNN.

No. 7528.   Decided December 14, 1951.   (238 P. 2d 408.)

See 35 C. J. S., False Imprisonment, sec. 57. Participation of defendant in false arrest. 22 Am. Jur., False Imprisonment, secs. 31-34; 120 A. L. R. 1322.

*Backman, Backman & Clark,* Salt Lake City, for appellant.

*B. Z. Kastler, Jr., Donald W. Redd,* Salt Lake City, for respondent.

JONES, District Judge.

This is an appeal from the judgment in an action involving false arrest and imprisonment. The case was tried to the court sitting without a jury. There was a recovery. Appellant asks this court to vacate the judgment against him because (1) the findings of fact are not supported by the evidence, and (2) the court erred in its interpretation and application of the law.

Are the findings supported by the evidence? Appellant argues that there is no evidence in the record to support the trial court's finding to the effect that appellant unlawfully and maliciously had respondent arrested and taken to the police station. We turn now to the evidence offered by respondent to see if there be any factual support to this finding. On the day of her arrest, respondent was at a used car lot, where the equity in the car which her husband had purchased from appellant's principal on a conditional sales contract was being offered for sale. It appears that respondent's husband had not complied with his contract covering the purchase of this vehicle, and appellant had been on the lookout for the car. When appellant discovered the vehicle at the used car lot, he summoned the police. Upon the arrival of the peace officers, appellant carried on a private conversation with one of the officers. Then this policeman approached respondent and told her that she had better go to the police station and for her to get into the police car. (No warrant for respondent's arrest was in existence, and it does not appear that she had committed any public offense.) Respondent complied with the direction of the officer and was transported to the police station and there imprisoned. Appellant, in his own vehicle, also proceeded to the police station. At that place a conversation took place between these parties in the course of which appellant informed respondent that he not only had caused her arrest but was going to send her to the penitentiary.

Are these facts sufficient to support the findings? The answer must be in the affirmative. It is not essential for the plaintiff in an action of this kind to prove an express command to the officer who makes the illegal arrest in order to recover. It is sufficient if the circumstances developed by the plaintiff support an inference that the defendant was the directing or instigating force back of the illegal arrest. 35 C. J. S., False Imprisonment, § 24, page 527. In the instant case the trier of the facts was con-

fronted with evidence which, if believed, justified the finding that appellant was the motivating power back of respondent's unlawful arrest and incarceration. The trial court saw fit to accept this testimony as true, and we now determine, after having examined the record, that such evidence was sufficient on which to base the finding in question.

Appellant attacks the finding of the trial court to the effect that Mr. Dunn had no reason to believe that respondent had committed a crime at the time of her arrest. In support of this contention, he points out that his proof showed that respondent was present and participated in the original car exchange transaction wherein his principal was tricked and duped out of its property by certain false representations made by respondent's husband, and that these facts were legally sufficient to cause appellant to honestly believe that respondent had committed a crime when he saw her there at the used car lot in question attempting to dispose of the car so fraudulently obtained. It is true that appellant offered evidence along these lines, but respondent also introduced evidence, and her proof was diametrically opposed to that presented by appellant. According to respondent's testimony, the automobile transaction was all between her husband and appellant, and all she did on the day of her arrest was to innocently accompany another who was trying to dispose of the spouse's equity in the car in question. It should be added that respondent's testimony was corroborated, at least in part, by documentary evidence and the testimony of other witnesses. The trial court, at the conclusion of the case, elected to accept as true the evidence presented by respondent, and to reject, as untrue, that introduced by appellant. That disposes of this issue because, this being an action at law, the appellate court is powerless to substitute another evaluation of the evidence for that of the trial court were such evidence was conflicting. See Const. Art. VIII, Sec. 9.

· Appellant complains because the trial court refused to grant his motion for a dismissal of the action, by rendering its judgment against him, and by refusing to grant the motion for a new trial. These contentions all merge into one proposition, viz.: What are the appropriate principles of law involved in this action? The two Utah cases cited by appellant are not in point, *Marks* v. *Sullivan,* 9 Utah 12, 33 P. 224, 20 L. R. A. 590, and *Smith* v. *Clark,* 37 Utah 116, 118, 106 P. 653, 26 L. R. A., N. S., 953, for the reason that they both involved factual situations arising out of complaints preferred before magistrates who saw fit to issue warrants of arrest. Here, appellant never did see fit to present the facts to a magistrate. See Sec. 105-11-2, U. C. A. Appellant's remaining citations are authority for the principle that one who merely gives information to an officer with or without probable cause or malice, without requesting, directing, or instigating the arrest and subsequent imprisonment, does not thereby make himself liable. 22 Am. Jur. 376; *Webb* v. *Prince,* 62 Ga. App. 749, 9 S. E. 2d 675, 677; *Snider* v. *Wimberly* 357 Mo. 491, 209 S. W. 2d 239; *Rich* v. *McInery,* 103 Ala. 345, 15 So. 663; and *Lemmon* v. *King,* 95 Kan. 524, 148 P. 750, L. R. A., 1915E, 882. We have no quarrel with this doctrine, but must conclude that the same cannot be controlling here because the evidence is such that the trial court could reasonably find as it did that appellant did instigate and direct the officer to make the illegal arrest and imprison this respondent. And these same precedents are also authority for the principle that he who participates in the unlawful arrest or imprisonment, or who instigates, authorizes, directs or assists an officer to do the unlawful act, or procures the unlawful arrest without process, becomes liable for false imprisonment. And see Sec. 35, Torts, Restatement of the Law; 22 Am. Jur. 371; and 12 Cal. Jur. 434. This we hold to be the correct statement of the law under the findings of the court. It, therefore, appears that the lower court did not err in its interpretation and application of the law.

Finally, appellant asserts that the court erred in finding that appellant knew, or should have known, that respondent's son would be taken from respondent upon her arrival at the police station. No argument is submitted in support of this proposition, nor is any citation of authority made. We have made a cursory examination of the record in this regard and find no error. The judgment should be, and accordingly is, affirmed. Costs to respondent.

WADE, J., concurs.

WOLFE, Chief Justice (concurring specially).

In order to explain my position, it is necessary to fully state the evidence, controverted and uncontroverted.

On May 24, 1949, respondent accompanied her husband to the used car lot of the Provo Lincoln Mercury Company at Provo, Utah. Appellant is president of this company. Respondent's husband, Mr. Arthur J. Pixton, in negotiating for the purchase of an automobile, falsely represented that he was Mr. Robert C. Coomes, who resided at 1055 South 4th East, Salt Lake City, Utah; that the nearest relative with whom he was not living was P. G. Bryan, 125 Paxton Avenue, Salt Lake City, Utah. Mr. Pixton purchased a 1948 Studebaker convertible. He turned in a 1947 Mercury sedan as a trade-in to apply on the purchase price. Mr. Pixton did not produce title papers to the Mercury, which bore Nevada license plates, but stated that the papers would be delivered to appellant within two days, or appellant would be notified he was unable to find them. Temporary stickers were placed on the windows of the Studebaker when it was delivered. At the trial, respondent denied that she participated in making any of the false representations, but she was present at the time the transaction took place. The conditional sales contract and buyer's statement were falsely signed "Robert C. Coomes." The day following the sale, appellant discovered that the Nevada license plates, which were attached to the Mercury sedan when it

had been turned in, were missing and had been removed without appellant's knowledge or consent. Respondent's husband did not show up with the title papers to the Mercury on May 26th, the appointed day, and appellant being concerned about the whole affair went to Salt Lake City and inquired about Mr. and Mrs. Coomes at the furnished addresses. No one by that name was known at the given addresses.

After futile inquiry, appellant went to the Salt Lake City Police Department and related the circumstances under which possession of the Studebaker had been obtained. After describing "Mr. Coomes" to Detective Saathoff of the Auto Theft Bureau, Detective Saathoff produced a photograph of Arthur J. Pixton and appellant was informed that the sheriff of Tooele County had a warrant for the arrest of Mr. Pixton. Not until this time did appellant become aware of the true identity of "Mr. and Mrs. Coomes." Appellant then reported to the Salt Lake City Police Department that the car had been obtained by "fraudulent purchase" and a record was so made.

On June 5, 1949, Mr. Dunn observed a similar Studebaker in the southeastern part of Salt Lake City bearing Nevada license plates. Mr. Dunn took the number of the license and returned to Provo where he determined that it was the same license plates which had been removed from the Mercury sedan. On June 6, 1949, appellant went to Salt Lake City to make a further search.

That afternoon, at Freed's used car lot, Mr. Dunn observed a person who later stated her name to be Mrs. Thatcher and who was a total stranger to him offering to sell the automobile to Freed's. The car bore the Nevada license plates; the temporary stickers had been removed and were later found in the glove compartment of the car. After checking the motor number and making sure that this was the automobile in question, appellant called the police department and reported that he had located the car.

Officers Knudsen and Spencer were dispatched to the scene and proceeded to question Mrs. Thatcher about possession of the car. About the time the officers were ready to leave with the car and Mrs. Thatcher in custody, repondent came from across the street and demanded to know what was going on. At first, the officers ignored her, but upon her insistent intercession, they inquired what her interest was in the matter. At the trial she testified that her husband had assigned his equity in the automobile to Mrs. Thatcher, which Mrs. Thatcher was endeavoring to sell when accosted by the police. The two women had previously called Freed's and had made an appointment concerning the sale. They had driven to the car lot together, but respondent testified that her little son was hungry and so she was feeding him some soup at a restaurant across the street from Freed's used car lot when she saw the police question Mrs. Thatcher. Officer Spencer testified that Mrs. Pixton related to him that

"she stayed away from the car lot because she was afraid that some one might identify her attempting to sell the automobile due to the fact that her husband had been in so much trouble previous to this time."

Respondent denied making this statement. Respondent introduced herself as Mrs. Coomes and stated that if the officers intended to take Mrs. Thatcher with them, they would have to take her, too. Appellant appeared and respondent asked him what was the matter. He replied, "You know what is the matter." Appellant identified the respondent as Mrs. Arthur J. Pixton and the officers then questioned her as to her husband's whereabouts. She told them he was out of the state; however, he was picked up that afternoon in Salt Lake City. At the trial, respondent denied having been asked where her husband was. Appellant held a "subdued conversation" with the police officers, after which respondent was arrested. She demanded to see her attorney before she answered any further question. The officers then took the respondent to the Salt

Lake City police station where she was booked, "Hold for Provo, investigation of auto theft."

Officer Knudsen, respondent's witness, testified that Mr. Dunn did not direct him to arrest the respondent at any time. He further stated that he knew there was a warrant out for the arrest of Mr. Pixton and that respondent was picked up in regard to her husband's activities. Officer Hunsaker who interrogated the respondent at the police station testified that respondent told him that she knew her husband had been obtaining automobiles by the use of post-dated checks, or by underhanded methods. Respondent denied making such a statement. Appellant appeared at the police station and when asked by the respondent why he had her arrested, he answered,

"I not only had you arrested, before I'm through with you, I will have you in the state penitentiary."

After Mr. Pixton was picked up, counsel for Mr. and Mrs. Pixton was called and he procured arraignment for Mr. Pixton and secured the release for respondent, after approximately three hours incarceration. The case was tried without a jury and the trial court entered findings of fact and conclusions of law that:

"the defendant unlawfully and maliciously had the plaintiff arrested without a warrant by police officers Knudsen and Spencer of the Salt Lake City police force. That at the defendant's instigation the plaintiff was taken * * * to the Salt Lake City Police Station where plaintiff was questioned intensively and detained and held in jail for several hours. That at the time the defendant caused and instigated the arrest of the plaintiff, plaintiff had committed no crime *and the defendant had no reason to believe that plaintiff had committed any crime.*" (Italics added.)

As will hereinafter be explained, there is no evidence to support this latter italicized portion of the lower court's findings.

Were it not for the appellant's statement made at the police station,

"I not only had you arrested, before I'm through with you, I will have you in the state penitentiary."

I would say that the findings of fact that the appellant caused and instigated Mrs. Pixton's arrest could not be sustained. The mere fact that there was a whispered conversation just prior to the arrest between appellant and the police officers is not probative evidence of the fact that Mr. Dunn instigated the arrest. The police officers testified that appellant did not direct the arrest to be made, but that they took Mrs. Pixton to the police station after she interceded in the matter of ownership of the car and because it was customary to pick up and hold the party as well as the automobile until the case was cleared. This car was listed as "obtained by fraudulent purchase" and the officers were performing their routine duty in determining who was responsible for having so obtained it. But the subsequent conversation in the police station may be interpreted by the fact finder as an admission that the appellant *had* respondent arrested, although to me it seems more likely that it was not a statement of fact, but merely an expression made in the heat of anger at being swindled. Thus, I proceed upon the factual basis that the appellant instigated respondent's arrest without first procuring a warrant.

If the question about to be discussed had been properly presented to the trial court when the issues were framed and if adequate assignments of error had been taken in order to raise such questions before this court, a different result might be obtained in this case. But the appellant's brief seeks reversal of the judgment only upon the ground that the court, sitting as the fact finder, erred in finding that the appellant unlawfully and maliciously had the respondent arrested. As the main opinion correctly states,

"In the instant case the trier of the facts was confronted with evidence which, if believed, justified the finding that appellant was the motivating power back of respondent's unlawful arrest and incarceration."

Because of my belief that this court should only review errors committed in the trial of the case below, I reluctantly concur in the affirmance of the judgment.

But I believe that it could have been shown that the appellant had justifiable grounds for procuring respondent's arrest based on the following statutes Utah Code Annotated 1943:

105-13-4.

"A private person may arrest another:    *   *   *.

"(3) When a felony has been in fact committed and he has reasonable cause for believing the person arrested to have committed it."

103-18-8.

"Every person who knowingly and designedly, by false or fraudulent representations or pretenses, obtains from any other person any  *   *   *  chattels  *   *   *  with intent to cheat or defraud any person of the same  *   *   *  and when the property so obtained is of the value of more than $50, the person so offending is punishable as in cases of grand larceny."

103-36-6.

"Grand larceny is punishable by imprisonment in the state prison *   *   *."

103-1-13.

"A felony is a crime which is or may be punishable with death, or by imprisonment in the state prison."

From the record it appears that a felony was in fact committed by Arthur Pixton, respondent's husband. The elements of the offense of obtaining money by false pretenses under section 103-18-8, supra, are listed in *State* v. *Timmerman,* 88 Utah 481, 55 P. 2d 1320, 1322, 56 P. 2d 1354, as follows:

"*   *   *   (1) There must have been false or fraudulent representations or pretenses. (2) The representations must have been made

knowingly and designedly. (3) There must have been a concurring intent to cheat or defraud the person to whom the false or fraudulent representations or pretenses were made. (4) Something of value must have been obtained because of the * * * pretenses. And (5) the party to whom the false * * * pretenses were made must have parted with something of value in reliance upon the * * * pretenses, believing them to be true."

The record shows that on Tuesday, May 24, 1949, respondent and her husband went to the used car lot of the Provo Lincoln Mercury Company in Provo, Utah. Mr. Pixton falsely represented himself and his wife to be Mr. and Mrs. Robert C. Coomes. The Conditional Sales Contract and Buyer's Statement were signed "Robert C. Coomes." Addresses were furnished for reference, at which places appellant later made inquiry and was told that Robert C. Coomes was unknown at such addresses. Respondent and her husband produced a stock form Bill of Sale on the Mercury car, which was traded in as part of the purchase price on the Studebaker. The Mercury bore Nevada license plates. Appellant noticed that Robert C. Coomes' name was spelled Robert C. *Coons* on the Bill of Sale describing the Mercury and directed respondent and her husband's attention to such fact. Appellant was told that the name was misspelled on the Bill of Sale and that they had no other identification because their luggage had been stolen while they were having lunch that day. Later appellant checked with the Provo Police Department and learned that no report had been made on stolen property by Robert C. Coomes. A trade-in value of $1248.00 was allowed on the Mercury and the conditional sales contract was signed for the $1200.00 balance on the Studebaker. There is evidence that (1) false representations were made by Arthur Pixton; (2) knowingly and designedly; (4) by which property worth more than $50.00 was obtained; and (5) that appellant relied upon the pretenses in parting with the Studebaker, believing the false representations to be true.

This leaves the third element: Was there a concurring intent to cheat or defraud the person to whom the false

or fraudulent representations were made? Just before the actual delivery of the car to Mr. Pixton, alias Mr. Coomes, Mr. Pixton said his wife objected seriously against time payments and that if appellant would wait two days before financing the contract that he would be back in Provo on business and would pay cash. He also promised to produce title and registration papers on the Mercury at that time. Mr. Pixton never returned to the Provo Lincoln Mercury Company. Appellant did not obtain title papers to the Mercury until after the respondent and her husband were placed in jail. The record shows that the Nevada license plates were removed from the Mercury without appellant's knowledge or consent. They were found attached to the Studebaker at the time of the arrest. The only reasonable inference is that Mr. Pixton effectuated this unlawful transfer. It meant that he would not have to apply for new license plates at the Motor Vehicle Department in the state capitol. Mr. Pixton knew that the Provo Lincoln Mercury Company held a conditional sales contract with a false name signed to it and no chance of being paid thereon, unless he appeared and made payments. Twelve days, and the date when the first cash payment was due, passed without any appearance or phone call from Mr. Pixton.

Where the question is considered whether a felony has been in fact committed in order to determine the lawfulness of an arrest, it is not necessary that there be a conviction for the felony in question. *People* v. *Coughlin,* 13 Utah 58, 44 P. 94, 95; *State* v. *Morgan,* 22 Utah 162, 61 P. 527. A felony may be committed, and yet no conviction may be obtained for a number of reasons. But what degree of proof is necessary for this court to reach a conclusion that a felony has been committed? In *People* v. *Coughlin,* supra, this court found a prior assault with intent to commit murder legalized an attempted arrest made by a private person who was shot and killed in the attempt.

The court stated:

> "*There is no room to doubt* that a felony had been in fact committed, and that Stagg and the others with him had reasonable cause for believing the persons they were attempting to arrest had committed it." (Italics added.)

Without expressing any further comment on what degree of proof is necessary to reach such a conclusion, in this case every reasonable inference is to the effect that Mr. Pixton made the false representations with a concurring intent to cheat or defraud the Provo Lincoln Mercury Company. If Mr. Pixton had subsequently appeared, delivered title papers to the Mercury and made payments on the Studebaker, even under the assumed name, that would indicate that his intention was bona fide, that he did intend to pay for the car and fulfill his contract obligations under the assumed name. Not having done so until after his arrest, and the fact that he surreptitiously removed the Nevada license plates at the same time he purchased the car under the false name convincingly shows that his purpose throughout was to perpetrate a fraud upon the Provo Lincoln Mercury Company. Mr. Pixton committed the felony of obtaining property by false pretenses worth more than $50.00.

Our statute 105-13-4, U. C. A. 1943, supra, adopts the rule that a private person is privileged to make an arrest when a felony has been in fact committed, and the person making the arrest has reasonable cause to believe the person he is arresting to have committed it. Here, the following facts show that the appellant had reasonable cause to believe that Mrs. Pixton was a co-conspirator with her husband in procuring the car by false pretenses. She allowed herself to be introduced as Mrs. Coomes when she accompanied her husband to the used car lot in Provo. She saw him sign the contract, "Mr. Robert C. Coomes" and she took part in the sale transaction. She told the police officers that her name was Mrs. Coomes when she walked across the street and interceded in behalf of Mrs. Thatcher. Respondent testified that she had been feeding her boy

some soup at a cafe across the street but the circumstances of her appearing after the police officers had already taken Mrs. Thatcher into custody gave appellant ample cause for believing that she was furtively acting as an accomplice. Hence, appellant had "reasonable cause for believing" that she was in the process of selling the car for her husband and was then and there participating in the scheme to swindle the Provo Lincoln Mercury Company. In view of the circumstances leading up to it, I would say that the arrest was privileged under Section 105-13-4 (3), U. C. A. 1943.

McDONOUGH, J. concurs in the opinion of WOLFE, C. J.

CROCKETT, J., being disqualified, did not participate herein.

HENRIOD, J., not participating.