Daniel P. **REAM**, Plaintiff and Respondent,

v.

David L. **FITZEN**, Defendant and Appellant.

David L. **FITZEN**, Counterclaim Plaintiff and Appellant,

v.

Paul **REAM**, Bank of Salt Lake, and Ream's Bargain Annex No. 2, Incorporated, a Utah Corporation, Counterclaim Defendants and Respondents.

No. 15220.

Supreme Court of Utah.

June 13, 1978.

Gordon A. Madsen, Robert C. Cummings of Madsen & Cummings, Salt Lake City, for defendant and appellant.

William J. Cayias, Salt Lake City, for Daniel Ream.

Ray H. Ivie, Provo, for Paul Ream.

John A. Snow, Salt Lake City, for Bank of Salt Lake.

HALL, Justice:

Defendant David L. Fitzen (hereinafter "Fitzen") appeals from the district court's refusal to accept his version of an accounting pertaining to the affairs of a joint venture and from the dismissal of his action to void a lien encumbrance on certain of the property of the venture.

Plaintiff Daniel P. Ream (hereinafter "Ream") entered into a joint venture agree-

ment in question with Fitzen. The venture was known as the Fitzen-Ream Equipment Company and its major activity was the leasing of a truck and tractor, principally to Fitzen who was a licensed demolition contractor.

The agreement required an equal division of expenses and profits. Fitzen was designated as the managing partner, however, any pledge of joint venture property required the signature of both parties. The agreement also made reference to the Fitzen's demolition business known as Bonneville Wrecking Company and provided for rentals or other contracts with that company.

Ream and Fitzen agreed to purchase a 1974 White truck for some $33,000 with a down payment of $6,000, the balance to be financed by defendant Bank of Salt Lake (hereinafter "Bank") and the joint venturers both executed a security agreement in favor of the Bank evidencing a lien against the White truck in the amount of the Bank's loan.

Ream contributed $6,000 in cash which was used for the down payment on the truck and Fitzen matched that contribution with $2,000 in cash and a truck bed valued at $4,000 which was mounted on the truck.

Ream's contribution of $6,000 consisted of the proceeds of a loan obtained from his father, defendant Paul Ream, and he alone executed a security agreement in favor of his father evidencing a lien against the truck for the full amount of that loan.

Ream subsequently sued Fitzen for an accounting, Fitzen counterclaimed seeking like relief, and also joined the Bank and Paul Ream as defendants, alleging they conspired to unlawfully encumber the White truck with the $6,000 lien in favor of Paul Ream.

The accountings presented at trial were substantially in dispute and the trial judge basically adopted the Ream accounting, entered a judgment of $106.03 against him, and dismissed Fitzen's action against the Bank and Paul Ream.

Fitzen contends that the trial court erred in its interpretation of the accounting evidence presented at trial and seeks to have this Court make its own findings of fact under its equitable powers. He further contends that the trial court erred in dismissing the Bank and Paul Ream from the case based on the finding that the $6,000 lien was ratified.

While it is true that in equity cases this Court may review questions of both law and fact[1] we are not bound to substitute our judgment for that of the trial court,[2] and because of its advantaged position we give considerable deference to its findings and judgment.[3]

The trial of this case spanned a period of four days and generated a voluminous record. That record is particularly illustrative of the well-accepted principle that the trial judge is in a far better position to judge the credibility of the witnesses, to observe their demeanor, and to weigh the respective merits of the case in the light thereof. As has been stated on numerous occasions, we shall not disturb the findings and judgment unless they are clearly against the weight of the evidence.[4]

Specifically regarding the court's rejection of Fitzen's accounting, a careful review of the record reveals adequate, believable evidence to support the facts ultimately found. Fitzen himself testified that he only set up records and accounts "after a fashion." He commingled accounts, failed to keep meaningful records and vouchers and utilized joint venture equipment with his

1. Utah Constitution, Article VIII, Section 9.

2. *Del Porto v. Nicolo,* 27 Utah 2d 286, 495 P.2d 811 (1972).

3. *Jacobson v. Jacobson,* Utah, 557 P.2d 156 (1976).

4. *Bear River State Bank v. Merrill,* 101 Utah 176, 120 P.2d 325 (1941) and the cases cited therein.

own personal business, Bonneville Wrecking Company.

■ Fitzen, as managing partner, had the burden of proof and persuasion.[5] He had the obligation to present an accurate accounting of the income generated from the lease of the equipment and this he failed to do. In fact, because of the hearsay nature of his accounting exhibit, it was not received in evidence as to the truth of the matters asserted therein.

■ In the absence of a showing of actual earnings generated by the use of the equipment, the trial judge appropriately concluded that Fitzen should be charged with the fair rental value thereof. He determined that figure to be $24,483 and there is sufficient evidence of hours of use and hourly rental value in the record to support his judgment.

■ In regard to the conspiracy action asserted against the Bank and Paul Ream, that matter sounds in tort and hence is a law action,[6] and not one in equity as contended by Fitzen. Consequently, we are precluded from substituting our evaluation of the evidence for that of the trial court where that evidence is conflicting.[7]

■ The evidence is in conflict regarding the $6,000 lien simply because Fitzen denies any knowledge of its existence. However, the following evidence elicited at trial sufficiently supports the finding of ratification. In September or October of 1974, Ream, Fitzen, Paul Ream and Rich and Cheney of the Bank met and discussed the $6,000 lien. Both Ream and Cheney testified with respect to the meeting, that the lien was discussed, and that Fitzen consented to it. There was also testimony of a similar second meeting attended by the same parties and an additional person named Mendenhall.

■ Fitzen's final point on appeal concerns the court's failure to reduce Ream's capital contribution account in the joint venture by the amount of the $6,000 lien it had deemed valid. He contends that since the lien was to secure Ream's initial $6,000 contribution to the joint venture, and since the White truck purchased therewith was lost by foreclosure, it necessarily follows that Ream's contribution to the joint venture was lost. While this contention may have substance, the record before us precludes us from resolving that issue.

The accounting methods resorted to by the parties in settling their accounts, and as adopted by the Court, are somewhat unorthodox since they are totally silent as to the partnership assets. The Uniform Partnership Act, adopted in this jurisdiction,[8] sets forth the rules for distribution in settling accounts between partners after dissolution and specifically requires the application of the assets to the satisfaction of liabilities.[9] The capital accounts of the partners are one of such liabilities.[10]

The initial partnership assets consisted of the 1974 White truck and a Caterpillar tractor, and it is entirely possible that additional assets were acquired, yet neither of the partners saw fit to provide the trial court with any accounting of those assets.

The White truck appears to have been foreclosed upon by Paul Ream and the Bank, yet the record is also devoid of an accounting of that transaction. As an apparent consequence, the trial court made no finding, one way or the other, as to the effect of the foreclosure upon the partnership assets and the capital contribution of Ream.

In light of the foregoing observations, it becomes evident that this final issue was not properly raised below and we may not

5. *Dunn v. Baugh,* 95 Idaho 236, 506 P.2d 463 (1973); *Dale v. Dale,* 57 N.M. 593, 261 P.2d 438 (1953).

6. 15A C.J.S. Conspiracy § 21.

7. *Pixton v. Dunn,* 120 Utah 658, 238 P.2d 408 (1951).

8. U.C.A., 1953, 48–1–1, et seq.

9. U.C.A., 1953, 48–1–37(3).

10. U.C.A., 1953, 48–1–37(2)(c).

consider it here for the first time,[11] nor may we speculate on matters outside the record.

Affirmed. No costs awarded.

ELLETT, C. J., and CROCKETT, MAUGHAN and WILKINS, JJ., concur.

11. *First Equity Corp. of Fla. v. Utah State University*, Utah, 544 P.2d 887 (1975).